## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MICHAEL G. DICK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-1060 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13 |
| | : | | |
| ERIC H. HOLDER, JR., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff Michael G. Dick ("Agent Dick"), a Special Agent with the Federal Bureau of Investigation ("FBI"), brought this action for monetary and injunctive relief against United States Attorney General Eric Holder, Jr. and FBI Director James Comey (collectively, "Defendants") in their official capacities alleging violations of the Privacy Act, 5 U.S.C. § 552a. Agent Dick's Privacy Act claims are based on a nationwide "Be on the Lookout" ("BOLO") alert that the FBI issued in response to a series of statements made by Agent Dick to agency personnel after he was injured at a shooting range and unable to receive immediate medical treatment.  Defendants have moved to dismiss the Privacy Act causes of action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Upon consideration of Defendants' motion, and the memoranda in support thereof and opposition thereto, the Court will grant the motion to dismiss the Privacy Act claims.[1]

---

[1]     On February 28, 2014, Agent Dick filed a first amended complaint.  *See generally* 1st Amend. Compl., ECF No. 19.  In the amended complaint, he sets forth new facts and causes of action related to alleged employment discrimination by Defendants and the FBI.  Through a

## II.  FACTUAL BACKGROUND

During all relevant times, Agent Dick was a GS-1811 Series Special Agent with the FBI.[2]
*See* Compl., ECF No. 1, at ¶ 1.  On the morning of May 7, 2013, Agent Dick arrived at a
shooting range in Quantico, Virginia, to undergo his quarterly firearms qualification testing.  *See
id.* ¶ 87.  While attempting to shoot a semi-automatic pistol, Agent Dick suffered an injury in the
form of a gash to his right hand between the thumb and forefinger.  *See id.* ¶ 88.  After the
instructor cleared him from the range, *see id.* ¶ 89, Agent Dick proceeded to the Heath Services
Unit at the Quantico Marine Corps Base, where he was asked to complete a questionnaire before
a doctor would provide treatment.  *See id.* ¶ 90.  When Agent Dick was unable to fill out the
questionnaire because of the hand injury, he left the Health Services Unit and drove to the Ready
Care Facility, which is a private healthcare provider in Stafford, Virginia.  *See id.* ¶¶ 91-92.  But
staff at the Ready Care Facility informed Agent Dick that his injury was too severe for them to
handle, and they directed him to a nearby urgent care facility for treatment.  *See id.* ¶ 92.

After arriving at the urgent care facility, Agent Dick waited for roughly forty minutes
while a receptionist attempted to obtain approval from the Health Services Unit to begin
providing medical treatment.  *See id.* ¶ 94.  When the receptionist was unable to receive the
necessary authorization, a nurse practitioner at the facility attempted to clean Agent Dick's
wound anyway.  *See id.*  But the severe pain from the cleaning process caused Agent Dick to

---

Minute Order dated February 28, 2014, the Court suggested, and the parties agreed, that the
amended complaint did not render Defendants' motion to dismiss moot because the new
complaint left intact the allegations and claims for the Privacy Act causes of action.  Because the
relevant briefs cite to the original complaint rather than the first amended complaint, the Court
refers to the original complaint throughout this Memorandum Opinion unless otherwise noted.

[2]     The complaint contains numerous allegations about Agent Dick's employment
with the FBI going back for more than a decade.  But because the Privacy Act claims at issue
today relate specifically to the BOLO, the Court focuses its attention only on the allegations
related to the alert.

pass out, *see id.* ¶ 95, and a physician's assistant recommended stitches as the appropriate treatment for the injury. *See id.* ¶ 96. The attending doctor, however, refused to provide further medical treatment to Agent Dick until the facility received authorization from the Health Services Unit. *See id.* at 98.

Frustrated with the Health Services Unit's failure to grant approval for the necessary treatment and with his hand wound still untreated, Agent Dick unsuccessfully attempted to call the unit himself. *See id.* ¶¶ 99-101. At some unspecified later time, however, the FBI faxed approval for medical treatment to the urgent care facility. *See id.* ¶ 101. Agent Dick then received stitches and painkiller shots to his right hand, and he was prescribed antibiotics and painkillers. *See id.* ¶ 102. After receiving this treatment, Agent Dick drove seventy-two miles from the urgent care facility to his house. *See id.* ¶ 103. Upon arriving home around 12:30 or 1:00 PM, Agent Dick went to a local pharmacy to fill his prescriptions, but the pharmacist on duty was unable to obtain authorization from the FBI to provide the medication. *See id.* ¶ 104. Agent Dick then called the Health Services Unit, but he also was unable to obtain the necessary approval. *See id.* ¶ 105. Still in pain and increasingly agitated by the lack of response from the Health Services Unit, Agent Dick told a Health Services Unit employee over the telephone that "he would personally come to the [FBI] to straighten out the approval process." *See id.* Agent Dick also "expressed displeasure at [Assistant Director of Human Resources] Bennett personally because the Health Unit employee claimed that Mr. Bennett had limited their ability to communicate approval authority and had revoked issuance of cell phones to facilitate and address requests." *See id.*

The next day, the FBI released a nationwide BOLO alert, which described Agent Dick as a "Subject of Interest," to "every conceivable local, state and federal law enforcement agency."

*See id.* ¶¶ 106, 109.  The alert included a variety of factual allegations about Agent Dick, including that he had expressed "discord and made indirect threats to several different members of varying divisions of both HQ and Quantico," and that he was on "administrative leave during a pending investigation."  *Id*. ¶ 106.  The BOLO also stated that Agent Dick was "suspended due to personal conduct," and that his access to FBI Headquarters was revoked after he "made threats against his chain of command."  *Id*.  In addition, the BOLO contained personal information about Agent Dick, including a "grim faced picture" of him, his social security number, and his address. *See id*.  Fox News ran a story about the May 8, 2013, BOLO, after which an FBI spokesman issued a correction that the BOLO involved "a personnel matter" and there was no longer any concern because Agent Dick had been located.  *Id*. ¶ 109.

Through the instant lawsuit, Agent Dick alleges that after the BOLO alert, he suffered a variety of negative consequences in his personal and professional life.  For example, the FBI allegedly suspended his security clearance the day after the BOLO was issued,[3] *see id*. ¶ 107, and initiated a "Mandatory Fitness for Duty Examination" of both a psychological and psychiatric nature on the basis that he had made a "series of disturbing statements and threats against FBI employees," *see id*. ¶¶ 113, 115.  Agent Dick also allegedly "lost all outside employment opportunities," and was "shunned by neighbors and peers."  *See id*. ¶ 132.  Finally, Agent Dick asserts that his wife received information from FBI agents about his "employment and his supposed lack of fitness and imminent termination, and was attempting to use that information in the divorce proceedings."  *Id*. ¶ 112.  In the complaint, Agent Dick alleges that he did not make the threats described in the BOLO, and that he was not on administrative leave or under investigation at the time of the alert.  *See id*. ¶ 107.

---

[3]     In contradictory paragraphs, Agent Dick alleges that his security clearance was suspended on both May 8, *see* Compl., ECF No. 1, at ¶ 111, and May 9, *see id.* ¶ 107.

### III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing that a court has subject-matter jurisdiction over his claim.  *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  When performing this analysis, a court must "accept as true all of the

factual allegations contained in the complaint and draw all inferences in favor of the nonmoving

party." *Autor v. Pritzker*, 740 F.3d 176, 179 (D.C. Cir. 2014).  But a "pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*,

550 U.S. at 557).  Although a court generally cannot consider matters beyond the pleadings, it

may consider "documents attached as exhibits or incorporated by reference in the complaint, or

documents upon which the plaintiff's complaint necessarily relies even if the document is

produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]"  *See*

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal

citations and quotation marks omitted).[4]


## IV.  ANALYSIS

As the U.S. Court of Appeals for the District of Columbia Circuit has explained, "[t]he

Privacy Act safeguards the public from unwarranted collection, maintenance, use and

---

[4]       The Court feels compelled to address an issue that arose in Agent Dick's
opposition to the motion to dismiss, namely his confusion about the standards under Rules
12(b)(1) and 12(b)(6).  Agent Dick suggests that Defendants attempted to convert their Rule
12(b)(6) motion into one for summary judgment.  *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss,
ECF No. 15, at 1.  But nowhere in their arguments do Defendants cite evidence outside the four
corners of the complaint.  Instead, the only supplemental evidence on which Defendants rely
comes within their Rule 12(b)(1) analysis regarding Agent Dick's failure to exhaust
administrative remedies.  *See* Defs.' Mem. Supp. Mot. Dismiss, ECF No. 13, at 25-26.  When
evaluating a Rule 12(b)(1) motion, a court may consider materials outside the pleadings to
determine whether jurisdiction exists.  *See, e.g.*, *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098,
1107 (D.C. Cir. 2005); *Coal. for Underground Expansion*, 333 F.3d at 198.  The Court therefore
rejects Agent Dick's attempt to supplement the complaint by attaching affidavits and other
extraneous evidence to his opposition brief which were not incorporated by reference or relied on
in the complaint itself.

dissemination of personal information contained in agency records … by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." *Bartel v. FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984) (footnotes omitted).  Subsection (g) of the Privacy Act provides four scenarios under which an individual may bring a civil cause of action against a federal agency, *see* 5 U.S.C. § 552a(g)(1)(A)-(D), but monetary recovery for actual damages, as opposed to injunctive relief, is available only for claims brought under two provisions: § 552a(g)(1)(C) for failure to maintain accurate records, and § 552a(g)(1)(D) for failure to comply with other provisions of the Privacy Act if the agency acted intentionally or willfully.  *See id.* § 552a(g)(4); *Scott v. Conley*, 937 F. Supp. 2d 60, 77 (D.D.C. 2013) ("Actual damages are available in suits for failure to maintain accurate records or failure to comply with other provisions of the law if the agency acted intentionally or willfully.").

In Count I, Agent Dick asserts a Privacy Act claim based on the FBI's alleged dissemination of false information through the May 8, 2013, BOLO alert, but he does not specify under which provisions of the Privacy Act he seeks relief.  Nonetheless, the Court and the parties agree that he asserts claims under § 552a(g)(1)(C) for failure to maintain accurate records and § 552a(g)(1)(D) for improper disclosure in violation of § 552a(b).  In Count II, Agent Dick asserts a claim under § 552a(g)(1)(D) for failure to safeguard confidential information in violation of § 552a(e)(10).  Finally, in addition to his request for $10 million in monetary damages, Agent Dick seeks injunctive relief in the form of the FBI issuing a statement that withdraws information from the BOLO and advises the public that Agent Dick is not a threat.  For the reasons discussed below, the Court concludes that Agent Dick has failed to state a claim for monetary relief in

Counts I and II, and failed to exhaust the necessary administrative remedies before seeking

injunctive relief such that the Court lacks subject-matter jurisdiction over that request.

## A.  The Proper Defendant

Before reaching the merits of Defendants' motion to dismiss, the Court must address

Agent Dick's continued failure to name a proper defendant in this lawsuit.  In the complaint,

Agent Dick names as defendants United States Attorney General Eric Holder, Jr., former FBI

Director Robert Mueller, III, and "Other Unknown Defendants."[5]  But the law is clear that only

federal agencies, not individuals, are the proper defendants for a Privacy Act cause of action.

*See* 5 U.S.C. § 552a(g)(1) (stating that an "individual may bring a civil action against the

agency"); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) ("[T]he district

court properly dismissed the named individual defendants because no cause of action exists that

would entitle appellant to relief from them under the Privacy Act or FOIA." (citations omitted));

*Earle v. Holder*, 815 F. Supp. 2d 176, 180 (D.D.C. 2011) ("[T]he Privacy Act does not authorize

claims against individuals.").

In his opposition to Defendants' motion to dismiss, Agent Dick appears to concede that

he has not named a legitimate defendant, *see* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss, ECF No.

15, at 2 n.1, yet he makes no effort to correct this error through a motion or other filing.  Instead,

he seems content to rely on the Court to substitute an agency as the proper defendant on his

behalf.  Although the Court is surprised by Agent Dick's dilatory approach to this issue, it

nonetheless will dismiss the Privacy Act claims against the individual defendants and substitute

the FBI as the proper defendant for these claims moving forward.  *See Cloonan v. Holder*, 768 F.

---

[5]        Pursuant to Rule 25(d), James B. Comey was substituted for former FBI Director
Mueller, and it is unclear if Agent Dick dropped the "Other Unknown Defendants" in the first
amended complaint.  *See* 1st Amend. Compl., ECF No. 19, at ¶¶ 2-3.

Supp. 2d 154, 162 (D.D.C. 2011) (distinguishing the Privacy Act from the Freedom of

Information Act and explaining that "naming components as defendants under the Privacy Act is

appropriate since the statute's plain language is clear that 'an agency need not be a cabinet-level

agency such as the DOJ' to be liable") (quoting *Lair v. Dep't of Treasury*, No. 03 Civ. 827, 2005

WL 645228, at *3 (D.D.C. Mar. 21, 2005)).

**B. Count I: Improper Disclosure Under 5 U.S.C. §§ 552a(g)(1)(D) and 552a(b)**

Subsection 552a(g)(1)(D), which is described as the Privacy Act's "catchall" provision,

*see Cacho v. Chertoff*, No. 06-00292, 2006 WL 3422548, at *4 (D.D.C. Nov. 28, 2006), provides

a civil cause of action whenever a government agency "fails to comply with any other provision

of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on

an individual."  5 U.S.C. § 552a(g)(1)(D).  Thus, to state a claim for relief under the subsection,

which works in conjunction with § 552a(g)(4), a plaintiff must establish that (1) the agency

violated another provision of the Privacy Act, (2) the violation was intentional or willful, and (3)

the violation had an adverse effect on the plaintiff.  *See Paige v. DEA*, 665 F.3d 1355, 1358-59

(D.C. Cir. 2012) (citing 5 U.S.C. §§ 552a(g)(1)(D) & 552a(g)(4)).

Although Count I of the complaint does not specify the underlying Privacy Act violation

on which the § 552a(g)(1)(D) claim rests, Agent Dick alleges that the Act "prohibits the

disclosure by a federal agency of any record contained in a system of records to any person or

another agency unless the disclosure falls within a listed exception."  Compl., ECF No. 1, at ¶

119.  Defendants therefore argue, and Agent Dick concurs through his opposition to the motion

to dismiss, that Count I includes a cause of action for improper disclosure pursuant to § 552a(b)

of the Privacy Act.  The Court agrees and will evaluate the claim pursuant to the requirements of

§§ 552a(g)(1)(D) and 552a(b).

### 1. Subsection 552a(b) Exemptions

Subsection 552a(b) of the Privacy Act generally prohibits government agencies from disclosing confidential files without the consent of the individual.  *See Bigelow v. DOD*, 217 F.3d 875, 876 (D.C. Cir. 2000).  An agency, however, may legally disclose protected information without consent if one of twelve statutory exemptions applies.  *See* 5 U.S.C. § 552a(b)(1-12) (listing the twelve exemptions).  Defendants argue that three of the twelve exemptions are applicable here, namely the provisions permitting disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties," *id.* § 552a(b)(1); "for routine use," *id.* § 552a(b)(3); and "to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual," *id.* § 552a(b)(8).  For the reasons outlined below, the Court concludes that none of the three exemptions are applicable in this instance.

### a. Subsection 552a(b)(1): Need To Know Exemption

Subsection 552a(b)(1) permits disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." When performing the § 552a(b)(1) inquiry, a court must ask "whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so in order to perform those duties properly."  *Bigelow*, 217 F.3d at 877 (describing this inquiry as the "point" of the exemption); *see also Cacho*, 2006 WL 3422548, at *4 ("What matters then is the 'need to know' of the agency official who received the disclosure, not the authority of the agency official who made the disclosure.").  The Court finds that the "need to know" exemption does not apply for two reasons.

First, as Defendants acknowledge, § 552a(b)(1) does not authorize disclosure outside the "agency," which this Court has defined broadly to include sharing between component agencies underneath the umbrella of the Department of Justice ("DOJ"), not just the specific agency that originally held the information, such as the FBI in this instance. *See Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 203 (D.D.C. 2011) (concluding that § 552a(b)(1) was intended to permit disclosure of information between component agencies of the DOJ). Here, Agent Dick alleges that the nationwide BOLO alert was issued "to every conceivable local, state and federal law enforcement agency." Compl., ECF No. 1, at ¶ 109. Thus, accepting this allegation as true for the purposes of resolving Defendants' motion, the "need to know" exemption provides no defense to the FBI's dispersal of information about Agent Dick to those law enforcement officials outside the DOJ and its component agencies. *Cf. In re Sealed Case*, 551 F.3d 1047, 1051 (D.C. Cir. 2009) (noting that the "Privacy Act generally requires agencies to obtain written consent for and to keep an accounting of disclosures of information outside the agency" (citing §§ 552a(b)(1) & 552a(c)).

Second, § 552a(b)(1) does not mechanically authorize the agency-wide release of information, which is what Defendants appear to be seeking. *See* Defs.' Mem. Supp. Mot. Dismiss, ECF No. 13, at 11. Instead, the exemption permits disclosure only "to those officers and employees of the agency" who actually needed to receive the information. *See* 5 U.S.C. § 552a(b)(1). Although this exemption is not limited "only to officers and employees within a certain office within an agency rather than to officers and employees of the entire agency," *Hanna v. Herman*, 121 F. Supp. 2d 113, 123-24 (D.D.C. 2000), a party relying on § 552a(b)(1) still must demonstrate that each official received the "record in connection with the performance of duties assigned to him" and that "he had to do so in order to perform those duties properly."

*Bigelow*, 217 F.3d at 877.  It is not entirely clear from the complaint who within the FBI received

the BOLO, but the Court may reasonably infer from Agent Dick's allegations that the alert was

blasted indiscriminately throughout the agency and not just specifically to those who may have

needed to receive it in connection with their job responsibilities.  Under such a situation,

permitting agency-wide distribution under § 552a(b)(1) without any showing of why each

employee needed to receive the information would allow the exception to swallow the rule; as

such, the Court cannot conclude that the FBI's disclosure of information through the BOLO was

authorized by § 552a(b)(1).

### b.  Subsection 552a(b)(3): Routine Use Exemption

Another exemption to § 552a(b) permits disclosure of a protected record for a "routine

use."  5 U.S.C. § 552a(b)(3).  The Privacy Act defines "routine use" as "the use of [a] record for

a purpose which is compatible with the purpose for which it was collected."  *Id*. § 552a(a)(7).

The Privacy Act also states that agencies must "publish in the Federal Register upon

establishment or revision a notice of the existence and character of the system of records, which

notice shall include … each routine use of the records contained in the system, including the

categories of users and the purpose of such use."  *Id*. § 552a(e)(4)(D); *see also Radack v. DOJ*,

402 F. Supp. 2d 99, 105 (D.D.C. 2005) ("In order to ensure that people are aware of the purposes

for which their information might be disclosed, agencies are required to publish each routine use

in the Federal Register.").  Thus, to successfully invoke the "routine use" exemption, a

government agency must demonstrate both compatibility with the purpose for which the record

was collected and publication in the Federal Register.  *See Dep't of the Air Force v. FLRA*, 104

F.3d 1396, 1401-02 (D.C. Cir. 1997); *Radack*, 402 F. Supp. 2d at 105 ("The government must …

demonstrate both 'compatibility' and publication in the Federal Register in order to successfully invoke the routine use exception.").

In support of their motion to dismiss, Defendants argue that the publication and compatibility elements are satisfied by citing to guidelines in the Federal Register regarding the personnel records of federal employees held by the Office of Personnel Management.  *See* Defs.' Reply Mem. Supp. Mot. Dismiss, ECF No. 17, at 7-8.  Specifically, the Publication of Notice of Systems of Records addresses the routine uses of "general personnel records files[,] … reports of personnel actions, and the documentation required in connection with these actions effected during an employee's Federal service."  Publication of Notice of Systems of Records, 71 Fed. Reg. at 35343.  These records "provide the basic source of factual data about a person's Federal employment while in the service and after his or her separation," and are used by an agency for "screening qualifications of employees; determining status, eligibility, and employee's rights and benefits under pertinent laws and regulations governing Federal employment; [and] computing length of service."  *Id*.  The Federal Register then identifies the following "routine use" for these records:

> To disclose pertinent information to the appropriate Federal, State, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, when the disclosing agency becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

*Id*. at 35348-49.  Although the Court finds that the publication requirement is satisfied, it cannot conclude that, given Agent Dick's allegations, the compatibility element is met.

Defendants suggest that the FBI's disclosure of information in the BOLO to law enforcement agencies was compatible with the purpose of collecting personal information to screen employees and determine their status.  *See* Defs.' Reply Mem. Supp. Mot. Dismiss, ECF No. 17, at 8.  Quite clearly, however, the information more plausibly was disclosed through the

BOLO not for the purpose of determining Agent Dick's employment status or eligibility, but rather so that other law enforcement agencies might locate, and perhaps apprehend, him. *Cf. Doe v. DOJ*, 660 F. Supp. 2d 31, 48 (D.D.C. 2009) (finding that the "routine use" exemption applied when the DOJ disclosed plaintiff's records to determine his eligibility for unemployment benefits because that was compatible with the purpose of collecting information to determine employment status and eligibility).

Nonetheless, looking at the likely purpose for which the FBI initially released the information, the Court is not convinced that the contours of the "routine use" described above were satisfied, namely because Agent Dick's allegations require the Court to infer that the BOLO was not disseminated just to "*appropriate* Federal, State, or local agenc[ies]." Publication of Notice of Systems of Records, 71 Fed. Reg. at 35348-49 (emphasis added). Indeed, Agent Dick alleges that the BOLO was issued nationwide "to every conceivable local, state and federal law enforcement agency," even though the complaint suggests that Agent Dick never left the D.C. metropolitan area. *See* Compl., ECF No. 1, at ¶ 109. The Court therefore cannot conclude at this time that the compatibility requirement for the proscribed "routine use" exemption was satisfied.

### c. Subsection 552a(b)(8): Compelling Circumstances Exemption

The Privacy Act also permits disclosure in "compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual." 5 U.S.C. § 552a(b)(8). The complaint, however, makes no mention of Agent Dick receiving such notice, and Defendants fail to address this issue in their motion to dismiss or through their reply memorandum after Agent Dick raised the issue in his opposition brief. Accordingly, the Court must conclude at this time that the "compelling

circumstances" exemption does not apply.  *Cf. Stafford v. SSA*, 437 F. Supp. 2d 1113, 1121

(N.D. Cal. 2006) (holding, without further analysis, that defendant-agency "cannot satisfy [the

compelling circumstances] exception … because it did not provide the requisite notice of the

disclosure to Plaintiff after making the disclosure").

2.  Elements Of A Claim Under §§ 552a(g)(1)(D) and 552a(b)

Because no exemptions apply, the Court next turns to the elements of a claim for

monetary damages under §§ 552a(g)(1)(D) and 552a(b).  Thus, Agent Dick must allege the

following: (1) that the disclosed information is a "record" contained within a "system of

records"; (2) that the agency improperly disclosed the information; (3) that the disclosure was

willful or intentional; and (4) that the disclosure adversely affected him.  *See Reed v. Dep't of the

Navy*, 910 F. Supp. 2d 32, 40 (D.D.C. 2012); *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d

149, 154 (D.D.C. 2004).  Defendants assert that Agent Dick has failed to allege facts satisfying

each of the four elements, and the Court addresses these arguments below.

*a.  System of Records*

The Privacy Act defines a "system of records" as "a group of any records under the

control of any agency from which information is retrieved by the name of the individual or by

some identifying number, symbol, or other identifying particular assigned to the individual[.]"  5

U.S.C. § 552a(a)(5).  Thus, under the Privacy Act a "'system of records exists only if the

information contained within the body of material is both *retrievable* by personal identifier and

actually *retrieved* by personal identifier.'"  *Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012)

(quoting *Maydak v. United States*, 630 F.3d 166, 178 (D.C. Cir. 2010) (emphasis in original));

*see also Feldman v. CIA*, 797 F. Supp. 2d 29, 38 (D.D.C. 2011) ("Under the so-called 'retrieval

rule,' the Privacy Act only covers disclosures of information that was either directly or indirectly

15

retrieved from a system of records." (internal citation, quotation, and alteration omitted)).  By contrast, the disclosure of information "acquired from non-record sources — such as observation, office emails, discussions with co-workers and the 'rumor mill' — does not violate the Privacy Act …, even if the information disclosed is also contained in agency records." *Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011) (citations omitted); *see also Krieger v. DOJ*, 529 F. Supp. 2d 29, 47 (D.D.C. 2008) ("Information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records.").

For the following reasons, the Court finds that, granting all reasonable inferences in favor of Agent Dick, the complaint contains sufficient factual allegations to plausibly suggest that the information in the BOLO was retrieved from a "system of records," rather than from independent sources.  First, the Court can easily infer that Agent Dick's personal identification information — such as his date of birth, social security number, and home address — was retrieved from his personnel file as maintained through the agency's recordkeeping system.  *See* Compl., ECF No. 1, at ¶ 120.  But Agent Dick's conclusory allegation that the "false, malicious and misleading statements [in the BOLO] … were drawn from a personal record," creates a closer call that requires further analysis into the other allegations in the complaint.  Specifically, in making this allegation Agent Dick is referring to the statements in the BOLO about his threats against FBI officials, his security clearance being suspended, and him being banned from FBI property.  *See, e.g.*, Compl., ECF No. 1, at ¶ 106 ("The BOLO claimed SA Dick could not enter FBI spaces, had expressed 'discord and made indirect threats to several different members of varying divisions of both HQ and Quantico.'…  The BOLO contended that his access to FBI

Headquarters had been revoked and that SA Dick had 'made threats against his chain of command.'").

To start, there are no non-conclusory allegations regarding whether information about Agent Dick's alleged threats was contained in a system of records, or regarding when or how the individuals who prepared the BOLO accessed such a system to obtain the information.  Indeed, given the near-contemporaneous timing of the alleged threats in relation to the BOLO, one possible inference is that this information came from an independent source, such as perhaps the direct recipient of Agent Dick's remarks, which would be insufficient to maintain a Privacy Act claim under §§ 552a(g)(1)(D) and 552a(b).  *See Feldman*, 797 F. Supp. 2d at 38 ("[T]he disclosure of information derived solely from independent sources is not prohibited by the [Privacy Act] even though identical information may be contained in a system of records." (citations omitted)).

There likewise are no direct factual allegations regarding whether information about Agent Dick's security clearance being suspended was contained in, and subsequently retrieved from, a system of records before being disclosed through the BOLO.  In fact, if one of Agent Dick's allegations is correct, his security clearance was not suspended until May 9, the day after the BOLO, so it would be implausible to infer that an official record of his suspension existed before the suspension occurred.  *See* Compl., ECF No. 1, at ¶ 107.  Agent Dick also alleges, however, that his clearance was suspended on May 8, *see id.* ¶ 111, which increases the plausibility that this information was contained in a system of records at some point in time before the BOLO was released.  A similar analysis applies to statements in the BOLO about Agent Dick being banned from FBI Headquarters, *see id.* ¶ 107, as there are no direct allegations suggesting that such information ever was contained in a system of records.

Nonetheless, the Court is satisfied that Agent Dick has alleged sufficient facts to raise a plausible claim that the information described above was contained in a system of records at some point in time before being retrieved and inserted into the BOLO.  First, given that the personal background details about Agent Dick were likely retrieved from a system of personnel records, it is reasonable to infer that the FBI did the same thing for the other information in the BOLO about Agent Dick's employment status and the alleged threats.  Second, Agent Dick's threats were allegedly made to a different unit within the FBI (the Health Services Unit) than the unit that released the BOLO (the Intelligence and Liaison Office), so the information had to have been transferred within the agency at some time, and one plausible method of that occurring was through a common system of records shared by the FBI units.  Third, the FBI is a very large law enforcement agency, so it is more plausible that the agency compiled information for the BOLO from an internal system of records than from separately talking to each employee who directly interacted with Agent Dick.  Thus, though it is a close call, for purposes of this motion the Court is willing to assume that Agent Dick has satisfied this element of the Privacy Act claim.

### b.  Adverse Effects And Causation

Next, even if some or all of the information disclosed through the BOLO was contained in and retrieved from a system of records, civil remedies are available only when the government agency made a disclosure "in such a way as to have an adverse effect on [the plaintiff]."  5 U.S.C. § 552a(g)(1)(D); *see also Gamble v. Dep't of the Army*, 567 F. Supp. 2d 150, 155 (D.D.C. 2008) ("Plaintiff is entitled to civil remedies under § 552a(b) only if the violation had an 'adverse effect' on him.").  Agent Dick asserts a variety of effects he allegedly suffered after the BOLO, including that he was suspended from work without pay, his security clearance was suspended, he was required to attend a mandatory fitness for duty examination, he lost outside

employment opportunities, he was shunned by neighbors and peers, and information from the BOLO was used in his divorce and child custody proceedings.  *See* Compl., ECF No. 1, at ¶¶ 111, 113, 132; Am. Compl., ECF No. 19, at ¶¶ 215-16.  Accepting that these events qualify as adverse effects under § 552a(g)(1)(D) for the limited purpose of the immediate discussion, Agent Dick fails to provide allegations plausibly suggesting a causal link between the BOLO and the adverse effects.

For example, Agent Dick alleges that his wife "received information from Bureau agents," not the BOLO, regarding his employment, so the Court cannot reasonably infer causation for that alleged adverse effect.  *See id.* ¶ 112.  The same is true for the mandatory fitness test.  Agent Dick alleges that the FBI "has stated as grounds for its examination that Plaintiff made a 'series of disturbing statements and threats against FBI employees.'"  *Id.* ¶ 115.  The plain language of the complaint therefore only suggests that it was Agent Dick's independent actions, not the BOLO — which merely describes his actions in far more limited terms — that prompted the FBI to mandate testing.  There likewise is no basis to infer that information in the BOLO caused the FBI to suspend Agent Dick's security clearance because the BOLO itself stated that his clearance already was suspended at the time the alert was issued.  *See id.* ¶ 106.  And even if Agent Dick was suspended the day after the BOLO, as he suggests in a contradictory allegation, *see id.* ¶ 107, the BOLO specified that Agent Dick was "suspended due to personal conduct," namely the threatening comments he allegedly made, not because of any separate information contained exclusively in the BOLO.  *See id.* ¶ 106; *cf. Pippinger v. Rubin*, 129 F.3d 519, 530-31 (10th Cir. 1997) (explaining that "the mere fact that information contained in Pippinger's personnel files was well-known in his workplace does not give rise to an inference that such knowledge was widespread because of a disclosure from Pippinger's personnel files,"

because the Privacy Act "does not prevent federal employees or officials from talking — even gossiping — about anything of which they have non-record-based knowledge" (citation omitted)).  For similar reasons, Agent Dick's conclusory allegation that he "has lost all outside employment opportunities as a result of the BOLO" does not withstand even cursory analysis. The complaint provides no allegations about the jobs for which Agent Dick applied or about what role the BOLO played in any employer's decision, including whether any potential employer even knew the BOLO existed.

Finally, the Court cannot reasonably infer that Agent Dick's suspension without pay, which occurred on June 19, 2013, was directly traceable to the BOLO.  *See* Am. Compl., ECF No. 19, at ¶ 215.  As Agent Dick alleges in the amended complaint, "[t]he suspension was ostensibly to determine whether [Agent] Dick's conduct presented a security issue[.]… Its real reason for the suspension was because it perceived [Agent] Dick as mentally impaired." *Id.* ¶ 216.  Whether the actual impetus for the suspension was Agent Dick's conduct or the agency's alleged belief that he was mentally impaired, both of those factors are separate and independent from the BOLO.  Indeed, the BOLO may in fact be a manifestation of the FBI's misplaced beliefs about Agent Dick's mental condition, but that does not mean the BOLO itself actually caused the suspension, as opposed to factors independent from the alert.  The same holds true if the suspension was based on Agent Dick's alleged threatening conduct because though the BOLO may have briefly described some of that behavior, the allegations in the complaint suggest only that the conduct prompted the suspension, not the description of that conduct in the BOLO.  The Court therefore concludes that the complaint fails to allege facts plausibly suggesting that any of the alleged adverse effects were caused by the disclosure of information in the BOLO, rather than from an independent source not covered by the Privacy Act.

Accordingly, Agent Dick's § 552a(g)(1)(D) claim in Count I must be dismissed, and the Court need not consider the remaining elements.

### C.  Count I: Failure To Maintain Accurate Records Under 5 U.S.C. § 552a(g)(1)(C)

Subsection 552a(g)(1)(C) of the Privacy Act affords a cause of action for monetary damages whenever an agency

> fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C).  This subsection thus provides a civil remedy if an agency fails to satisfy the standard in § 552a(e)(5), which imposes a statutory duty to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." *Id.* § 552a(e)(5); *see also Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 660 (D.C. Cir. 1996) ("Subsection (g)(1)(C) provides a civil remedy if an agency fails to satisfy the standard in subsection (e)(5) 'and consequently a determination is made which is adverse to the individual.'" (quoting 5 U.S.C. § 552a(g)(1)(C)).  A plaintiff seeking damages for failure to maintain records "must sue under subsection (g)(1)(C) and not subsection (g)(1)(D)." *Deters*, 85 F.3d at 660.

To survive the motion to dismiss, Agent Dick must allege facts showing that: (1) he was aggrieved by an adverse determination; (2) the FBI failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination; (3) the FBI's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the FBI acted intentionally or willfully in failing to maintain accurate records.  *See Chambers v. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009); *Gard v. Dep't of Educ.*, 789 F. Supp. 2d 96, 106

(D.D.C. 2011).   But as is explained below, the Court finds that the BOLO is exempt from the

Privacy Act's maintenance requirement, so Agent Dick's claim fails as a matter of law.   In

addition, even if the BOLO was not exempt, the Court finds that the claim requires dismissal

because Agent Dick again fails to establish causation between the BOLO and the alleged harm.

1.   Statutory Exemption Of Certain FBI Records

As a threshold matter, Defendants argue that Agent Dick's claim for monetary damages

under § 552a(g)(1)(C) fails because, pursuant to 28 C.F.R. § 16.96, the FBI's Central Records

System is exempt from the maintenance requirement of § 552a(e)(5).   *See* Defs.' Mem. Supp.

Mot. Dismiss, ECF No. 13, at 20.   Exemption (j)(2) of the Privacy Act allows the head of a law

enforcement agency to promulgate rules to exempt "any system of records" consisting of

"information compiled for the purpose of a criminal investigation, including reports of

informants or investigators, and associated with an identifiable individual."   5 U.S.C. §

552a(j)(2)(B).   The Attorney General has established regulations pursuant to this subsection that

exempt materials in the FBI's Central Records System from various provisions of the Privacy

Act — including the maintenance requirement of § 552a(e)(5) — provided that the records at

issue were compiled for a law enforcement purpose.   *See* 28 C.F.R. § 16.96(a); *Doe v. FBI*, 936

F.2d 1346, 1353 (D.C. Cir. 1991) ("Although both subsections (j) and (k) refer to 'systems of

records,' we have previously held that 28 C.F.R. § 16.96 (1990), the FBI exemption regulation

respecting its CRS [Central Records System], does not remove that entire filing system from the

requirements of the Act; rather, CRS documents qualify for exemption only if they constitute law

enforcement records within the meaning of the statute."); *cf. Vymetalik v. FBI*, 785 F.2d 1090,

1095 (D.C. Cir. 1986) (discussing the broad contours of the Privacy Act and the law enforcement

exemptions).

Agent Dick argues that the exemption in 28 C.F.R. § 16.96 does not apply because Defendants have "not stated a law enforcement purpose for the BOLO or the information it contained." Pl.'s Mem. Opp'n Defs.' Mot. Dismiss, ECF No. 15, at 19. Such an argument is untenable, however, because the BOLO, at the time it was issued, clearly served a law enforcement purpose in locating Agent Dick and warning others about potential risks if they came into contact with him. Thus, to the extent Agent Dick seeks monetary damages for the FBI's alleged failure to maintain accurate information in the BOLO, his claim fails.

### 2. Adverse Determination And Causation

Even if the FBI record was not exempt from the Privacy Act's maintenance requirement, Agent Dick's allegations still would fail to satisfy the necessary elements of a claim under § 552a(g)(1)(C). Pursuant to this subsection, Agent Dick must allege, among other things, that he was aggrieved by an adverse determination, which is defined as a decision "resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient." *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007) (citing Privacy Act Implementation: Guidelines and Responsibilities, Office of Personnel Management, 40 Fed. Reg. at 28,969 (July 9, 1975)). In the original complaint, Agent Dick alleges that the BOLO caused the FBI to suspend his security clearance and force him to submit to a mandatory fitness for duty examination. *See* Compl., ECF No. 1, at ¶¶ 111, 113, 131. In addition, Agent Dick alleges in the amended complaint that the FBI suspended him indefinitely without pay on June 19, 2013. *See* Am. Compl., ECF No. 19, at ¶¶ 215-16.

A suspension from work, even if temporary, qualifies as an adverse determination under the Privacy Act, so Agent Dick has alleged at least one event that satisfies § 552a(g)(1)(C). *See*

*Lee*, 480 F. Supp. 2d at 210 (stating that the "adverse determination" was plaintiff's fourteen-day suspension).  On the other hand, although his security clearance was suspended pending further review, no final decision has yet been made that would rise to the level of an adverse determination for purposes of the Privacy Act.  *See* Am. Compl., ECF No. 19, at ¶ 223; *Prows v. DOJ*, No. 87-1657, 1988 WL 8256, at *6 (D.D.C. 1988) (finding no adverse determination when plaintiff-prisoner was concerned that the Parole Commission might deny him parole on the basis of erroneous information in his file, but no such adverse determination had yet been made). Likewise, the mandatory fitness requirement appears not to constitute an adverse determination for purposes of the Privacy Act because, to date, it has denied him no right or privilege of employment, but rather has imposed only a condition of employment which Agent Dick is separately challenging.  *See* Am. Compl., ECF No. 19, at ¶¶ 176-202.

Agent Dick's other allegations about lost outside employment opportunities, being shunned by neighbors and peers, and having the BOLO used as evidence at his divorce proceedings also do not amount to adverse determinations by an agency.  *See Lee*, 480 F. Supp. 2d at 210.  For example, in *Chambers v. Department of the Interior*, the plaintiff alleged that a lost record hampered her ability to apply for government jobs.  568 F.3d 998, 1007 (D.D.C. 2009).  The Court held that "[s]uch an adverse effect … is not enough to make out a claim under subsection (g)(1)(C), which requires a specific 'adverse determination' resulting from an agency's failure to maintain accurate records."  *Id.* (footnote omitted); *see also Lee*, 480 F. Supp. 2d at 210 ("Plaintiff also alleges generally that the Army's refusal to amend his records has adversely affected his 'prospects for future employment, whether governmental or non-governmental,' but he has not alleged any corresponding concrete, adverse determinations, as he must to state an adverse-determination claim." (citation omitted)).  Thus, these alleged

consequences do not qualify under § 552a(g)(1)(C) because they do not rise to the level of a "concrete" determination made by the agency. *See McCready v. Nicholson*, 465 F.3d 1, 12 (D.C. Cir. 2006) ("Quite simply, the text of the statute conditions relief upon a concrete, adverse determination."); *see also Doe v. FBI*, 718 F. Supp. 90, 105 (D.D.C. 1989) (stating that "[r]eputational injury simply does not qualify" as an adverse determination under § 552a(g)(1)(C)).

The Court therefore finds that Agent Dick has alleged an adverse determination at least through his suspension without pay. The mandatory fitness examination and suspended security clearance are closer calls, but even if the Court accepts them as adverse determinations, they are insufficient for maintaining the Privacy Act claim because causation is absent. Specifically, it is not enough to simply allege that an adverse determination occurred; instead, Agent Dick also must demonstrate that the FBI's reliance on the allegedly inaccurate record caused that determination. *See Lee*, 480 F. Supp. 2d at 210; *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005) (explaining that a plaintiff must "show not only that the inaccurate records were considered in making the determination, but that an error in the records *caused* the determination" (emphasis in original)). The Court, however, already has determined that the complaint lacks sufficient allegations from which it can reasonably infer that the BOLO caused Agent Dick to be suspended without pay, and even if the Court accepts that the security clearance suspension or mandatory fitness examination constitutes an adverse determination under § 552a(g)(1)(C), dismissal is required for these events as well because, for the same reasons as in the § 552a(g)(1)(D) analysis, the complaint fails to state a plausible claim that any information in the BOLO, let alone any specific inaccurate information, caused the determinations. As such, the Court must dismiss Agent Dick's § 552a(g)(1)(C) claim.

### D.  Count II: Failure To Safeguard Records Under 5 U.S.C. §§ 552a(g)(1)(D) and

### 552a(e)(10)

In Count II, Agent Dick alleges that the FBI violated § 552a(e)(10) of the Privacy Act "in

that it utterly failed to safeguard Plaintiff's confidential protected personnel and employment

information from being disseminated in a way that could cause 'harm, embarrassment,

inconvenience, or unfairness' to Plaintiff."  Compl., ECF No. 1, at ¶ 134.  Subsection

552a(e)(10) requires an agency to "establish appropriate administrative, technical and physical

safeguards to insure the security and confidentiality of records."  5 U.S.C. § 552a(e)(10).  To

maintain a civil action under this subsection through § 552a(g)(1)(D), a "plaintiff must identify a

rule or safeguard … that [DOJ] should have established but did not."  *Doe v. DOJ*, 660 F. Supp.

2d 31, 43 (D.D.C. 2009) (internal citation and quotation omitted; alteration in original); *see also*

*Chambers v. Dep't of Interior*, 568 F.3d 998, 1007 n.7 (D.C. Cir. 2009) (holding that plaintiff's §

552a(e)(10) claim failed because he "has not identified any rule or safeguard … that [the

defendant-agency] should have established but did not").

The DOJ, and by extension the FBI, has "'promulgated extensive regulations codified at

28 C.F.R. §§ 16.1 *et seq*. that safeguard its Privacy Act-protected records[.]'"  *Doe*, 660 F. Supp.

2d at 43 (quoting *Krieger v. DOJ*, 529 F. Supp. 2d 29, 54-55 (D.D.C. 2008)).  The DOJ also has

"issued numerous rules and regulations regarding the maintenance of records," *see id.*, and Agent

Dick has failed to identify any rule or safeguard that was breached or that should have been in

place but was not.  *See Gard v. U.S. Dep't of Educ.*, 789 F. Supp. 2d 96, 109-10 (D.D.C. 2011)

(granting summary judgment when "the case record contains no evidence that [the defendant-

agency's] record system lacked adequate safeguards or that any information from [plaintiff's]

file was released because of a breach in that system's integrity"); *Kvech v. Holder*, No. 10-545,

2011 U.S. Dist. LEXIS 105541, at *20 n.11 (D.D.C. Sept. 19, 2011) (rejecting § 552a(e)(10)

claim when there was "nothing in [the] complaint which might indicate that the employees

obtained the information because the FBI's 'administrative and technical safeguards' were

insufficient 'for the adequate protection of the confidentiality of the particular information it

keeps.'" (citations omitted)); *cf. Pilon v. DOJ*, 796 F. Supp. 7, 12-13 (D.D.C. 1992) (finding that

§ 552a(e)(10)'s inadequate safeguard element was satisfied when plaintiff "pleaded that the

disclosures which are the subject of this lawsuit occurred after the [DOJ] became aware of

several prior disclosures regarding this plaintiff and several requests for investigation and

corrective action").  Because Agent Dick fails to allege facts plausibly showing a § 552a(e)(10)

violation, the Court must grant Defendants' motion to dismiss Count II.

### E.  Injunctive Relief As To Counts I And II

In his Prayer for Relief, Agent Dick requests "injunctive and mandamus type relief" in

the form of the FBI issuing a "statement that withdraws the information contained in the BOLO

and advises law enforcement and the public at large that Special Agent Dick is not a threat."

Compl., ECF No. 1, Prayer For Relief ¶ D.  It is well settled that this Court lacks jurisdiction

when a plaintiff fails to exhaust administrative remedies before seeking injunctive relief under §

552a(g)(1)(A).  *See, e.g.*, *Dickson v. Office of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987);

*Kursar v. TSA*, 581 F. Supp. 2d 7, 17 (D.D.C. 2008).  This is because § 552a(g)(1)(A) only

permits an individual to bring a civil action against an agency when "an agency ... makes a

determination under [§ 552a(d)(3)] not to amend an individual's record in accordance with his

request, or fails to make such review in conformity with that subsection."  Subsection

552a(d)(3), in turn, establishes the administrative procedure a party must follow when seeking to

amend an agency record.  *See* 5 U.S.C. § 552a(d)(3); *see also McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006) (discussing §§ 552a(g)(1)(A) & 552a(d)(3)).

Defendants move to dismiss Agent Dick's request for injunctive relief under Rule 12(b)(1) on the basis that the Court lacks jurisdiction to hear the claim because Agent Dick has not exhausted the administrative remedies.  In response, Agent Dick does not argue that he has exhausted the administrative procedures delineated in § 552a(d)(3).  Instead, he offers four arguments for why injunctive relief remains available as a remedy for his Privacy Act claims in Counts I and II: first, exhaustion was not required because he seeks injunctive relief under § 552a(g)(1)(D), not the correction of an administrative record under § 552a(g)(1)(A); second, exhaustion was not required because the FBI never advised him of the administrative review process; third, even if exhaustion was required, doing so was futile; and fourth, policy considerations require the Court to ignore the exhaustion rule.  *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss, ECF No. 15, at 24-27.  For the reasons discussed below, the Court rejects each of these arguments.

To start, despite Agent Dick's suggestion that there is confusion surrounding the issue, this Court recently held in *Scott v. Conley*, 937 F. Supp. 2d 60, 79 (D.D.C. 2013), as well as in other earlier cases, that injunctive relief is not available as a remedy for claims under §§ 552a(g)(1)(C) or 552a(g)(1)(D).  *See also Kursar*, 581 F. Supp. 2d at 19 (explaining that injunctive relief is available under §§ 552a(g)(1)(A) and 552a(g)(1)(B), not § 552a(g)(1)(C)); *AFGE v. Hawley*, 543 F. Supp. 2d 44, 54 (D.D.C. 2008) (dismissing request for injunctive relief because the Privacy Act authorizes such relief only in §§ 552a(g)(1)(A) and 552a(g)(1)(B) claims, and plaintiff brought suit under § 552a(g)(1)(D)); *McNeill v. IRS*, No. 93-2204, 1995 U.S. Dist. LEXIS 2372, at *9 (D.D.C. Feb. 7, 1995) ("The [Privacy] Act provides for injunctive

relief in two specific situations — to correct an incorrect record [in § 552a(g)(1)(A)], and to produce records improperly withheld [in § 552a(g)(1)(B)] — neither of which apply to Plaintiff. The Act provides for injunctions in no other circumstances." (citations omitted)).  Thus, to the extent Agent Dick attempts to rely on § 552a(g)(1)(D) as the basis for seeking injunctive relief in Counts I and II, that request fails as a matter of law.

Next, broadly construing Agent Dick's request as one for amendment of an administrative record — which is at least to some extent what he seeks by asking the FBI to withdraw the BOLO and issue a public correction — the Court lacks subject-matter jurisdiction to hear the claim unless he first exhausted the administrative remedies.  This is because subsection 552a(g)(1)(A) provides a civil remedy only after an agency makes a final determination as outlined in § 552a(d)(3), which provides the steps a party must take before filing for injunctive relief in a district court.  *See McCready*, 465 F.3d at 14; *Dickson v. Office of Personnel Mgmt.*, 828 F.2d 32, 40 (D.C. Cir. 1987); *see also Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) (explaining that § 552a(g)(1)(A) requires a plaintiff to "initially seek an amendment or access from the [pertinent] agency and even seek review within the agency before coming to court").  Consequently, premature Privacy Act suits in this Circuit are dismissed for lack of subject-matter jurisdiction, rather than under the judicial exhaustion doctrine.  *See, e.g.*, *Barouch v. DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) ("[F]ailure to exhaust administrative remedies under the Privacy Act is a jurisdictional deficiency because exhaustion is required by statute."); *Kursar*, 581 F. Supp. 2d at 18 (dismissing Privacy Act claims brought without exhaustion of administrative remedies for lack of subject-matter jurisdiction); *Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007) (same).

With this background in mind, the Court turns to Agent Dick's arguments for not requiring exhaustion.  First, his suggestion that exhaustion was futile fails as a matter of law. This Court already has explained that "[b]ecause in a Privacy Act case, exhaustion is an express statutory prerequisite to the exercise of jurisdiction by a federal court, the Court cannot excuse the requirement on the basis of futility."  *Kursar*, 581 F. Supp. 2d at 18 (internal citations, quotations, and alterations omitted); *see also Murphy v. United States*, 121 F. Supp. 2d 21, 28 (D.D.C. 2000) ("Plaintiff's belief that resort to administrative remedies would be futile does not excuse his failure to exhaust.  In a Privacy Act case, exhaustion is an express statutory prerequisite to the exercise of jurisdiction by a federal court and vague and conclusory allegations provide no basis for us to short-circuit the exhaustion requirement." (internal citations, quotations, and alterations omitted)).  For the same reason, Agent Dick's argument that exhaustion is not required because the FBI failed to inform him about the administrative review process is not grounds to circumvent the jurisdictional exhaustion requirement and therefore is without merit.[6]

Second, Agent Dick argues that the Court should overlook the exhaustion requirement because Congress "could not have envisioned that courts would be powerless to fully remedy agency abuse when it passed an Act specifically designed to prevent government abuses of an individual's privacy rights."  Pl.'s Mem. Opp'n Defs.' Mot. Dismiss, ECF No. 15, at 27.  Agent Dick misunderstands, however, that Congress itself wrote and passed the Privacy Act, including the jurisdictional exhaustion requirement, and the Court cannot ignore a clear Congressional

---

[6]     Agent Dick's reliance on *Harper v. Kobelinski*, 589 F.2d 721 (D.C. Cir. 1978) is misplaced.  In *Harper*, the agency failed to comply with a provision in the Privacy Act by not informing plaintiff of his right to seek administrative review of the agency's denial of his request to amend records.  Agent Dick, on the other hand, fails to allege that any request was made to the FBI in the first place, let alone that the FBI failed to provide accurate information in response.

mandate about the limits of its jurisdiction.  *See Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S.

804, 807 (1986).  In addition, by including a jurisdictional exhaustion requirement in the Privacy

Act, Congress chose to emphasize other values over providing a remedy for all privacy

violations, such as protecting an agency's independence to collect and maintain records

necessary for carrying out its duties.  *See Dickson*, 828 F.2d at 40 ("The Privacy Act itself

represents the compromise reached by Congress between a citizen's right to correct inaccurate

records and the government's need to assemble critical information for responsible employment

decisionmaking.").  It is not the Court's province to rebalance these values, and as such, Agent

Dick's policy argument is unpersuasive.

　　　　Finally, turning back to the complaint and § 552a(g)(1)(A), the Court finds that Agent

Dick has failed to allege that he made a single step towards, let alone completed, exhausting

administrative remedies before filing suit, and the evidence provided by Defendants confirms

this fact.[7]  *See* Hardy Decl., ECF No. 13-2, at ¶ 4 (stating that the FBI has no record of Agent

Dick requesting to amend his administrative record); *see also* 28 C.F.R. § 16.46 (describing the

process for requesting amendment or correction of records held by the DOJ or its component

agencies, such as the FBI); *Banks v. Lappin*, 539 F. Supp. 2d 228, 236 (D.D.C. 2008) (discussing

28 C.F.R. § 16.46).  Because Agent Dick has not satisfied this requirement for obtaining

injunctive relief under § 552a(g)(1)(A), the Court concludes that it lacks subject-matter

---

[7]　　　　Agent Dick also argues that "an attempt at correction" was made in the form of
multiple emails from his attorney to the FBI.  *See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss, ECF
No. 15, at 27 (citing Emails from Byrnes to FBI, ECF No. 15-3, Ex. C at 3-4).  But as the FBI
points out, "the exhibits attached to the Byrnes Declaration establish that Plaintiff has never
requested any correction of the BOLO; instead, what Plaintiff characterizes as 'an attempt at
correction' consisted of emails and letters promising litigation and urging the FBI to contact
Plaintiff's counsel to discuss settlement or resolution."  Defs.' Reply Mem. Supp. Mot. Dismiss,
ECF No. 17, at 17.  Clearly, such "attempts" do not satisfy the processes set out by § 552a(d)(3)
and the DOJ's regulations, 28 C.F.R. § 16.46.

jurisdiction over the claim.  *See, e.g.*, *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir.

1986) (dismissing § 552a(g)(1)(A) claim for failure to exhaust administrative remedies when

appellant "never asked the agency to make any specific amendments to his records" before filing

suit); *Kursar v. TSA*, 581 F. Supp. 2d 7, 17 (D.D.C. 2008) (dismissing claim for lack of subject-

matter jurisdiction because "plaintiff's failure to exhaust the administrative remedies provided by

§ 552a(d) forecloses any relief under § 552a(g)(1)(A)").

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Privacy Act causes of

action for monetary and injunctive relief in Counts I and II is **GRANTED**.  An order consistent

with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 10, 2014                                          RUDOLPH CONTRERAS
                                                                              United States District Judge