**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MICHAEL G. DICK, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-1060 (RC) |
| | : | | |
| v. | : | Re Document No.: | 21 |
| | : | | |
| ERIC H. HOLDER, JR., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS OR FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Michael G. Dick ("Agent Dick"), a Special Agent with the Federal Bureau of Investigation ("FBI"), brought this action against the United States Attorney General and FBI Director (collectively, "Defendants") in their official capacities. His first amended complaint alleges that he suffered discrete acts of discrimination and a hostile work environment because of his disability, in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Agent Dick also claims that he suffered retaliation for his opposition to this alleged discrimination, in violation of both statutes. Defendants have moved to dismiss or for summary judgment on most of Agent Dick's claims on the basis of failure to exhaust or failure to state a claim. *See* ECF No. 21. For the reasons given below, the Court grants their motion in part and denies it in part.

## II.  FACTUAL BACKGROUND

Agent Dick was a GS–1811 Series Special Agent with the FBI at all times relevant to this case.  *See* First Am. Compl. ¶ 1, ECF No. 19.  On May 7, 2013, he injured his right hand during his quarterly firearms qualification testing.  *See id.* ¶¶ 91–93.  After various administrative hurdles prevented him from obtaining prompt medical treatment, he called the FBI Health Services Unit and expressed frustration with an FBI human resources official.  *See id.* ¶ 109.  The following day, May 8, 2013, the FBI released a nationwide "Be on the Lookout" ("BOLO") alert containing allegedly false claims that Agent Dick was on "administrative leave during a pending investigation" and had "made threats to his chain of command."  *See id.* ¶ 110; *see also* BOLO, Pl.'s Ex. 1, ECF No. 23-2.[1]  The day after the BOLO's issuance, the FBI suspended Agent Dick's security clearance.  *See* First Am. Compl. ¶ 115.

Agent Dick responded with complaints of disability discrimination.  On May 23, 2013, his attorney Kevin E. Byrnes ("Byrnes") informed an FBI official by email that Agent Dick "is invoking all the protections of the . . . Rehabilitation Act" and "is asserting that you are perceiving him as disabled and have tried to revoke his clearance based on the perception that he is mentally unfit."  Byrnes email of May 23, 2013, Compl. Ex., ECF No. 19.  On June 7, 2013, Byrnes advanced similar claims in a letter to the FBI human resources official whom Agent Dick had criticized.  *See* Byrnes letter of June 7, 2013, Pl.'s Ex. 1, ECF No. 23-2.

These complaints were followed by events that affected Agent Dick personally and professionally.  At some point in June, Agent Dick learned that his wife had received from the FBI unfavorable information about him that she then sought to use in divorce proceedings.  *See*

---

[1] The Court's previous memorandum opinion contains a fuller discussion of the events leading up to the BOLO as well as the BOLO's contents.  *See Dick v. Holder*, No. 13-cv-1060 (RC), 2014 WL 4450531, at *1–2 (D.D.C. Sept. 10, 2014) (ECF No. 29).

First Am. Compl. ¶ 116.  On June 18, 2013, Agent Dick received from the FBI Health Unit a notice requiring him to complete a fitness for duty examination.  *See id.* ¶¶ 117, 122–24.  On June 19, 2013, Agent Dick was allegedly suspended indefinitely without pay, pending the FBI's review of whether his conduct posed a security threat.  *See id.* ¶¶ 215–16, 223.  After Byrnes objected to the fitness for duty examination requirement, Agent Dick subsequently appeared for the examination but refused to sign an informed consent agreement and release.  *See id.* ¶¶ 125–30.  Ultimately, on December 5, 2013, he completed the examination.  *See id.* ¶ 135.  Agent Dick has neither received a copy of his examination results nor been reinstated.  *See id.* ¶ 138.

On June 21, 2013, Agent Dick sent a letter to FBI Equal Employment Opportunity ("EEO") Counselor M. Drew Crislip ("Crislip") complaining of the FBI's medical inquiries.  The letter bore the subject "Formal Equal Employment Opportunity (EEO) complaint by SSA Michael Gerald Dick," and asserted that because the FBI had ordered the fitness for duty examination on the basis of a perceived mental disability, the examination violated the Rehabilitation Act.  *See* First Am. Compl. ¶ 140; Dick letter of June 21, 2013, Pl.'s Ex. 3, ECF No. 23-4.  The letter requested that the examination be cancelled and that his records be kept in confidence, and also sought counseling from Crislip.  *See* Dick letter of June 21, 2013, Pl.'s Ex. 3.  On June 26, 2013, Crislip interviewed Agent Dick, who was accompanied by Byrnes.  *See* Report of Counseling, Defs.' Ex. A, ECF No. 21-1.  During their conversation, Agent Dick alleged that he had suffered discrimination on the basis of age and mental handicap, as well as retaliation on account of his "prior issues with management & successful Merit Systems Protection Board case against [the FBI]."  *Id.*

On July 2, 2013, after informal efforts to resolve the dispute proved unfruitful, Crislip issued Agent Dick a notice of his right to file a formal complaint.  *See id.*  Accordingly, on July

8, 2013, Agent Dick filed a formal EEO charge of discrimination.  *See generally* Complaint of

Discrimination, Defs.' Ex. B, ECF No. 21-2.  In indicating the bases for alleged discrimination,

he checked the choices for "age" and "reprisal," but not "disability."  *Id.*  In the explanation

fields, Agent Dick wrote that he "invoke[d] the anti-retaliation provision and substantive

protections of Federal EEO law" and alleged that the FBI had committed "acts of retaliation and

reprisal over the past several years" and was "trying to force [him] out because of [his] age."  *Id.*

He further challenged the FBI's issuance of the BOLO, the mandatory fitness for duty

examination, a "10 year internal affairs investigation," and the revocation of his security

clearance.  *Id.*  In the package containing his formal EEO charge, Agent Dick enclosed a copy of

his initial letter to Crislip.  *See* Dick Aff. ¶¶ 2, 8, Pl.'s Ex. 2, ECF No. 23-3.

      On October 23, 2013, FBI EEO Officer Kevin M. Walker ("Walker") sent Byrnes a letter

advising him that the FBI had begun to process Agent Dick's EEO charge.  *See generally* Walker

letter of Oct. 23, 2013, Defs.' Ex. C, ECF No. 21-3.  In his letter, Walker stated that the FBI had

accepted for investigation four claims of age discrimination, based respectively on the discrete

acts of (1) the FBI Health Services Unit's response to Agent Dick's May 2013 injury; (2) the

BOLO; (3) the June 18, 2013, letter directing him to complete a fitness for duty examination; and

(4) the June 19, 2013, letter suspending him from duty without pay.  *See id.* at 2.  Walker's letter

made no mention of any claims of discrete-act or hostile work environment discrimination under

the Rehabilitation Act, or hostile work environment discrimination under the ADEA.  *See*

*generally id.*  Walker also explained that the FBI was dismissing the "reprisal" claim for failure

to state a claim, on the grounds that Agent Dick had not "allege[d] that he previously engaged in

. . . protected activity prior to the occurrence of" the alleged retaliation.  *Id.* (citing 29 C.F.R.

§ 1614.107(a)(1) (mandating agency dismissal for failure to state a claim)).  The letter directed

Byrnes to respond within fifteen days of his receipt of the letter if Agent Dick "disagree[d] with [Walker's] decision not to accept the basis of reprisal" or "believe[d] that the basis or the allegations described in his EEO complaint has not been properly identified for investigation . . . ." *Id.* at 3.

Walker's letter further explained that the dismissal of Agent Dick's "reprisal" claim "may be appealed solely through the procedures described" in the letter. *Id.* The letter explained that if he did not receive the Report of Investigation within 180 days following the filing of his formal charge, Agent Dick could request a hearing before an administrative judge. *See id.* at 3–4.[2] If the administrative judge were to disagree with the "reasons for dismissal," "the entire EEO complaint—or all of the portions not meeting the standards for dismissal—w[ould] continue in the hearing process." *See id.* at 4.[3] The administrative judge's "decision on the dismissal" could be appealed "by either party after the final agency action is taken on the complaint." *Id.*[4] Walker's letter further explained that Agent Dick "also has the right to file a civil action . . . after 180 days from the date of filing the complaint if an appeal has not been filed and final action has not been taken[.]" *Id.*[5]

Walker never received a response from Byrnes or Dick concerning either the dismissed reprisal claim or the claims identified for investigation. *See* Trent Decl. ¶¶ 5, 6, ECF No. 21-4. January 5, 2014, marked the passage of 180 days after Agent Dick filed his charge, and the FBI had not taken final action. *See* First Am. Compl. ¶¶ 141, 146. Agent Dick neither requested a hearing nor amended his charge to elaborate on his reprisal claim.[6]

---

[2] *See* 29 C.F.R. §§ 1614.107(b), 1614.108(f), (h).
[3] *See* 29 C.F.R. § 1614.107(b).
[4] *See* 29 C.F.R. §§ 1614.107(b), 1614.110(a), 1614.401.
[5] *See* 29 C.F.R. § 1614.407(b).
[6] *See* 29 C.F.R. § 1614.106(d).

Instead, in February 2014, Agent Dick filed his first amended complaint, which asserts discrimination claims under the Rehabilitation Act and the ADEA based on discrete acts, a hostile work environment, and retaliation. *See* First Am. Compl. ¶¶ 176–251.  The complaint further alleges that Agent Dick exhausted administrative remedies for all of these claims because the FBI had not taken final agency action within the 180-day investigation period. *See id.* ¶¶ 141, 146.  After February 2014, FBI officials allegedly attempted to interfere with Agent Dick's right to counsel by making certain threats and intimidating his attorney, *see id.* ¶¶ 225– 30, and the agency is now allegedly monitoring Agent Dick and his communications with counsel, *see id.* ¶ 237.

In their supplemental motion, Defendants move to dismiss or for partial summary judgment on most of the Rehabilitation Act and ADEA claims. *See* Mem. Supp. Defs.' Suppl. Mot. Dismiss 2, ECF No. 21.  They do not, however, presently seek dismissal or summary judgment on Agent Dick's discrete-act age discrimination claims asserted in Count Ten. *Id.* at 2 n.3.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing that a court has subject-matter jurisdiction over his claim. *See Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In determining whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).

### B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court generally cannot consider matters beyond the pleadings at the motion-to-dismiss stage, it may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations and quotation marks omitted).

### C.  Rule 56

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

# IV.  ANALYSIS

In his first amended complaint, Agent Dick asserts several claims under the Rehabilitation Act and the ADEA, which prohibit discrimination based on disability and age, respectively.[7]  The Rehabilitation Act "forbids federal agencies from engaging in any discrimination prohibited by the Americans with Disabilities Act of 1990 (ADA)."  *Solomon v. Vilsack*, 628 F.3d 555, 560 (D.C. Cir. 2010); *see also* 29 U.S.C. § 791(g).  Discriminatory acts prohibited by the ADA include "denying employment opportunities to . . . [an] employee who is an otherwise qualified individual with a disability" and "using . . . employment tests . . . that screen out or tend to screen out an individual with a disability," unless the tests are "shown to be job-related for the position in question and . . . consistent with business necessity."  42 U.S.C. § 12112(b)(5)(B), (b)(6).  The ADEA makes it unlawful for an employer to discriminate against an individual "because of such individual's age."  29 U.S.C. § 623(a)(1), (2).  Such discrimination includes "limit[ing] . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee . . . ."  *Id.*

The Rehabilitation Act and ADEA also forbid retaliation against employees who complain of discrimination prohibited by those statutes.  *See* 42 U.S.C. § 12203 (ADA anti-

---

[7] Counts One and Two of the first amended complaint reassert the original complaint's claims for violations of the Privacy Act, 5 U.S.C. § 552a.  *See* First Am. Compl. ¶¶ 157–75.  When the first amended complaint was filed, the parties had already briefed Defendants' motion to dismiss the original complaint's Privacy Act claims, and the parties agreed that because the new complaint "left intact" those claims, the pending motion was not rendered moot.  *See Dick*, 2014 WL 4450531, at *1 n.1.  The Court subsequently granted Defendants' motion to dismiss the Privacy Act claims.  *See generally id.*  For the reasons given in the Court's prior memorandum opinion, the Court now dismisses the Privacy Act claims in Counts One and Two of the first amended complaint.  Accordingly, in this memorandum opinion, the Court analyzes only the Counts asserting Rehabilitation Act and ADEA claims addressed in Defendants' supplemental motion.

retaliation provision, applicable to Rehabilitation Act retaliation claims by virtue of 29 U.S.C.

§ 791(g)); 29 U.S.C. § 623(d) (ADEA anti-retaliation provision).  To establish a *prima facie* case

of retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he

suffered a materially adverse action by his employer; and (3) a causal link connects the two.  *See*

*Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (Rehabilitation Act); *Jones v. Bernanke*, 557

F.3d 670, 677 (D.C. Cir. 2009) (ADEA).

A federal agency employee who asserts Rehabilitation Act and ADEA claims against his

employer must "initiate his . . . complaint with the agency."  *Kizas v. Webster*, 707 F.2d 524, 544

(D.C. Cir. 1983).  Under Equal Employment Opportunity Commission ("EEOC") regulations,

only after notifying the agency's EEO office, filing a formal charge with the agency, and

allowing the agency time to resolve the charge, can the employee file a civil action in federal

district court.  *See* 29 C.F.R. §§ 1614.105, 1614.106, 1614.108, 1614.407.  This procedure

"vest[s] in the federal agencies and officials engaged in hiring and promoting personnel 'primary

responsibility' for maintaining nondiscrimination in employment."  *Kizas*, 707 F.2d at 544

(citation omitted) (discussing same administrative procedures for federal employee complaints

under Title VII).

"A failure to exhaust administrative remedies for Rehabilitation Act claims is a

*jurisdictional* defect . . . ."  *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 58 (D.D.C. 2011) (citing

*Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)).[8]  Because exhaustion is a jurisdictional

---

[8] *Spinelli*'s holding that exhaustion is jurisdictional under the Rehabilitation Act comes into tension with the Supreme Court's decision in *Arbaugh*, which explained that without a clear statement in the statute labeling a limitation as jurisdictional, courts should presume that such limitation is not jurisdictional.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006).  Indeed, the D.C. Circuit more recently relied on *Arbaugh* in holding that exhaustion is not jurisdictional under Title VII.  *See Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011).  But because *Spinelli* was decided in May 2006, after *Arbaugh* was issued in February 2006, and

requirement, the plaintiff bears the burden to prove that he has exhausted his Rehabilitation Act

claim.  *Id.*  By contrast, under the ADEA, failure to exhaust is an affirmative defense.  *See Koch*

*v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010) (citing *Rann v. Chao*, 346 F.3d 192, 194–95

(D.C. Cir. 2003)).  Accordingly, the defendant bears the burden to prove that the plaintiff has

failed to exhaust his ADEA claim.  *See id.*

For exhaustion purposes, the EEO charge encompasses claims that are "like or

reasonably related to the allegations of the charge and growing out of such allegations."  *Park v.*

*Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted) (discussing scope of Title

VII administrative claim).  To be sufficiently related in this manner, a claim "must arise from

'the administrative investigation that can reasonably be expected to follow the charge of

discrimination.'"  *Id.* (citation omitted).  The "like or reasonably related" test balances two

competing concerns.  On the one hand, "[t]he purpose of the [exhaustion] doctrine is to afford

the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening

the courts."  *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996); *see also Brown v. Marsh*, 777

F.2d 8, 15 (D.C. Cir. 1985) (describing "exhaustion doctrine's purpose" as "giving the agency

notice of a claim and opportunity to handle it internally").  On the other hand, because courts

must ensure that remedies provided by federal employment discrimination law are "accessible to

individuals untrained in negotiating procedural labyrinths . . .[,] the strictures of common law

pleading have no place in a scheme largely dependent upon self-service in drawing up

administrative charges."  *Brown*, 777 F.2d at 14 (internal quotation marks and citations omitted)

(discussion Title VII exhaustion); *accord Lyles v. District of Columbia*, 777 F. Supp. 2d 128, 134

---

because it has not been withdrawn or overruled, this Court is still bound by its holding that
exhaustion is jurisdictional under the Rehabilitation Act.  *See Cobell v. Salazar*, 816  F. Supp. 2d
10, 15 (D.D.C. 2011) (citing *Brewster v. C.I.R.*, 607 F.2d 1369, 1373 (D.C. Cir. 1979) (per
curiam)).

(D.D.C. 2011).  Accordingly, the fact that a plaintiff presents a claim "with greater specificity" in court than he did before the agency cannot alone foreclose a finding of exhaustion.  *Lyles*, 777 F. Supp. 2d at 134 (citation omitted).

## A.  Exhaustion of Administrative Remedies

Defendants contend that Agent Dick has failed to exhaust his claims for discrete-act and hostile work environment discrimination under the Rehabilitation Act, his claim for hostile work environment under the ADEA, and his claims for retaliation under both statutes.  For the reasons given below, the Court agrees with Defendants as to the Rehabilitation Act discrete-act and hostile work environment claims and the ADEA hostile work environment claim.  The Court concludes, however, that Agent Dick properly exhausted his retaliation claims under the Rehabilitation Act and the ADEA.

### 1.  Discrete Discriminatory Acts and Hostile Work Environment under the Rehabilitation Act (Counts Three, Four, Five, Six, Eight, and Ten)

The Court first considers whether Agent Dick has shown that he exhausted his claims for discrete-act discrimination and hostile work environment under the Rehabilitation Act.  Agent Dick alleges several discrete discriminatory acts—the BOLO issuance (Count Five), the improper collection and disclosure of confidential information related to the fitness for duty examination (Count Four), the fitness for duty examination itself (Count Three), suspension without pay (Count Six), the failure to disclose to him the fitness for duty examination results (Count Eight), and interference with his right to counsel and ongoing monitoring of him and his communications with counsel (Counts Eight and Ten).  *See* First Am. Compl. ¶¶ 176–219, 222–37.  Count Ten further alleges that these acts cumulatively constituted a hostile work

environment.  *See id.* ¶¶ 233–37; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

115 (2002) (distinguishing hostile work environment claims from those based on discrete acts).[9]

       The Court concludes that Agent Dick has not exhausted administrative remedies as to his

Rehabilitation Act discrete-act and hostile work environment discrimination claims because he

failed to challenge the FBI's reasonable omission of these claims from the scope of the EEO

investigation.  As a preliminary matter, Agent Dick does not dispute that his formal EEO charge

made no mention of any disability discrimination claims based either on discrete acts or a hostile

work environment.  In the formal charge, he asserted claims of discrimination based only on

"age" and "reprisal"; he did not check "disability."  *See* Complaint of Discrimination, Defs.' Ex.

B.  Nor do his explanations in the charge allege that any specific discriminatory act or hostile

work environment was premised on his actual or perceived disability.  *See id.*  Lastly, the age

discrimination and retaliation claims in Agent Dick's EEO charge cannot serve to exhaust his

disability-related claims because the theories alleged are entirely distinct.  *Cf. Bowe-Connor v.*

*Shinseki*, 923 F. Supp. 2d 1, 7 (D.D.C. 2013) (dismissing claim of national origin discrimination

for failure to exhaust where EEO charge alleged only age and gender discrimination); *Nyunt v.*

*Tomlinson*, 543 F. Supp. 2d 25, 35 (D.D.C. 2008) (dismissing race discrimination claim for

failure to exhaust where EEO charge alleged only national origin discrimination).

       Nor can Agent Dick rely on the fact that he informally raised a Rehabilitation Act claim

*before* filing his formal EEO charge when he initially sought counseling from Crislip.  To be

sure, Agent Dick's initial letter to Crislip, styled as a "Formal Equal Employment Opportunity

(EEO) complaint," expressly challenged the fitness for duty examination requirement as a

violation of the Rehabilitation Act, on the grounds that Agent Dick was treated adversely for his

---

[9] Certain claims are duplicative, and the first amended complaint does not include a Count Nine.

perceived mental disability.  *See* Dick letter of June 21, 2013, Pl.'s Ex. 3.  But this informal

communication, standing alone, is insufficient.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1350

(D.C. Cir. 2012) ("Filing a formal complaint is a prerequisite to exhaustion . . . , so [plaintiff]

cannot rely on the EEO counseling report to establish exhaustion of a claim that he failed to

include in his formal complaint." (internal citation omitted)).

        The Court's inquiry, however, does not end here.  In his opposition and supporting

affidavit, Agent Dick contends for the first time that in the package containing his formal EEO

charge, he enclosed a copy of his initial letter to Crislip.  *See* Pl.'s Mem. Opp'n 4 (¶ 18 of factual

statement); *id.* at 10–11; Dick Aff. ¶¶ 2, 8, Pl.'s Ex. 2.  Explaining his reasons for enclosing the

letter rather than raising the disability discrimination claims in his formal charge, Agent Dick

avers that Crislip told him that he "did not need to allege the Rehabilitation Act [claim] on the

Form 201A [of the formal charge] as [he] had already done so."  Dick Aff. ¶ 8, Pl.'s Ex. 2.  In

essence, Agent Dick claims that his formal EEO charge incorporated the Rehabilitation Act

claims asserted in his initial letter to Crislip.

        The Court is wary of Agent Dick's attempt to advance a jurisdictional allegation wholly

absent from his complaint.  *See District of Columbia v. Barrie*, 741 F. Supp. 2d 250, 263 (D.D.C.

2010) ("[A] party may not amend its complaint or broaden its claims through summary judgment

briefing."); *Mahoney*, 824 F. Supp. 2d at 58 (establishing Rehabilitation Act plaintiff's burden to

meet jurisdictional exhaustion requirement); *see also* First Am. Compl. ¶¶ 139–43 (failing to

allege enclosure of letter to Crislip).  Nonetheless, because Agent Dick has proffered an affidavit

supporting his allegation, and in the interests of judicial efficiency, the Court will assume the

truth of Agent Dick's factual assertion that he enclosed his letter to Crislip with his EEO charge.

*Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").[10]

Even assuming this fact, the Court concludes that Agent Dick has not carried his burden of demonstrating that he exhausted administrative remedies as to his Rehabilitation Act discrete-act and hostile work environment claims. First, because Agent Dick failed to contest the absence of those claims from Walker's letter identifying claims for investigation, the claims could no longer "arise from 'the administrative investigation that *can reasonably be expected* to follow the

---

[10] Defendants contend that the Court should disregard this factual allegation because it "lacks any corroboration and is contradicted by all the available . . . evidence." Defs.' Reply Supp. Suppl. Mot. Dismiss 7 (quoting *Arrington v. United States*, 473 F.3d 329, 343 (D.C. Cir. 2006)). But Agent Dick's assertion is not "contradicted" by any record evidence. Defendants proffer the declaration of Granette Trent, the Acting Unit Chief of the FBI's Office of Equal Employment Opportunity Affairs ("OEEOA"). But Trent's declaration is conspicuously silent on the question of whether Agent Dick actually enclosed his letter to Crislip with his EEO charge. Trent avers only that Agent Dick's "formal" EEO charge made no mention of disability claims; that the FBI did not accept such claims for investigation; and that Agent Dick "did not contact OEEOA to assert any disability claim . . . at *any time subsequent to the filing*" of his EEO charge. Trent Decl. ¶¶ 5, 6 (emphasis added). By his declaration, Crislip asserts that he did not advise Agent Dick to omit his Rehabilitation Act claims from his EEO charge, but he says nothing about whether Agent Dick enclosed the letter with his formal charge. *See* Crislip Decl. ¶ 5, Defs.' Reply Ex. 1, ECF No. 27-1.

   Likewise, Defendants' arguments on reply leave untouched Agent Dick's factual allegation that he enclosed the letter to Crislip with his formal EEO charge. Defendants first argue that no correspondence from Dick or Byrnes *prior to* submission of the formal EEO charge constituted a formal EEO charge. *See* Defs.' Reply Supp. Defs.' Suppl. Mot. Dismiss 4–5. The Court agrees, as already explained above, but this argument is of no consequence here. Defendants further contend that Crislip did not actually advise Dick that he need not raise his disability claim in his formal EEO charge. *See id.* at 5–6. This argument attacks the truth of Agent Dick's *reasons* for enclosing the letter to Crislip, but does not controvert the allegation that he actually did so. Lastly, Defendants argue that even if Agent Dick's allegations about Crislip's instructions are true, exhaustion is a jurisdictional requirement that cannot be waived. *See id.* at 5. This proposition might be correct as a legal matter, but Agent Dick contends that the jurisdictional exhaustion requirement was *satisfied*, not waived. *See* First Am. Compl. ¶ 141.

   Lastly, in a footnote, Defendants assert that Crislip's alleged instruction to Agent Dick would be inadmissible hearsay. *See* Defs.' Reply Supp. Defs.' Suppl. Mot. Dismiss 6 n.3. Defendants are mistaken: Agent Dick does not offer Crislip's instruction for the "truth of the matter asserted" therein (*i.e.*, that Agent Dick in fact did not need to include his disability claims in his EEO charge). Fed. R. Evid. 801(c)(2).

charge of discrimination.'" *Park*, 71 F.3d at 907 (citation omitted) (emphasis added).  Agent

Dick does not dispute that his Rehabilitation Act claims were not among those claims identified

for investigation by Walker's letter.  *See generally* Walker letter of Oct. 23, 2013, Defs.' Ex. C.

Nor does he genuinely dispute that Byrnes received Walker's letter and that Byrnes failed to

contest the scope of the FBI's proposed investigation within the allotted fifteen days.[11]  Agent

Dick's inaction thus precludes a finding that his EEO charge "could reasonably be expected upon

investigation to lead to" his Rehabilitation Act discrete-act and hostile work environment claims.

*Park*, 71 F.3d at 909.

Second, Agent Dick fails to offer any evidence supporting his allegation that the FBI

manipulated the system to create an exhaustion issue by "suppress[ing]" and intentionally

"ignor[ing]" his letter to Crislip containing the Rehabilitation Act claims.  Pl.'s Mem. Opp'n 11.

---

[11] To be sure, Walker's letter was addressed to Byrnes rather than Dick himself.  Both Dick and Byrnes aver that they had no attorney-client relationship insofar as the EEO matter was concerned, and that Crislip was aware of this fact.  *See* Dick Aff. ¶¶ 6–7, Pl.'s Ex. 2; Byrnes Aff. ¶ 4, ECF No. 23-5.  Agent Dick's statement of facts explains that this absence of formal representation explained why "[Byrnes] did not reply to . . . [Walker's] letter regarding processing of [Agent Dick's] EEO complaint."  Pl.'s Mem. Opp'n 4.  But even Byrnes states that he "forwarded any inquiries from the EEO investigator to [Agent Dick]."  Byrnes Aff. ¶ 5.  The Court further notes that because Walker's letter was addressed to Byrnes, who in fact received the letter, Byrnes's contact information must have been supplied to Walker.  *See* Walker letter of Oct. 23, 2013, Defs.' Ex. C.  Moreover, it appears from the closing caption in the letter that a copy of the letter was sent by "[c]ertified" mail to Agent Dick, who does not expressly deny receipt.  *See id.*  Lastly, Agent Dick cannot disavow that he retained Byrnes for purposes of the EEO charge, while also claiming that Byrnes's earlier communications on his behalf "unequivocally" raised his Rehabilitation Act claims.  Pl.'s Mem. Opp'n 2, 3; *see also* Byrnes letter of June 7, 2013, Pl.'s Ex. 1; Byrnes email of May 23, 2013, Comp. Ex.  The closest Agent Dick comes to denying that he received Walker's letter is an assertion in his affidavit that "[a]t no time following [his] submission [of the EEO charge] was [he] contacted by or asked to provide a statement to any FBI investigator."  Dick Aff. ¶ 9, Pl.'s Ex. 2.  This assertion does not create a genuine dispute of material fact: Walker's letter, addressed to Byrnes, is fully consistent with Agent Dick's assertion of the lack of direct "contac[t]" or request for any "statement."  *Id.*  At bottom, because Agent Dick's evidence is insufficient to support a finding that he (or his attorney Byrnes) had no knowledge of Walker's letter, there is no genuine dispute of material fact.  *See Scott*, 550 U.S. at 380 (explaining that dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant).

An agency may not unreasonably omit claims from investigations, in hopes that a complainant's tardy realization of the omission will constitute a failure to exhaust. *Cf. Cheatham v. Holder*, 935 F. Supp. 2d 225, 236 (D.D.C. 2013) (explaining that because "the investigation naturally and necessarily was limited to those issues raised before the EEO Counselor," the agency's decision not to identify and investigate other claims asserted in the formal charge, without any objection, resulted in a failure to exhaust). But here, even if Agent Dick had enclosed his letter to Crislip, the formal EEO charge neither explicitly incorporated the letter nor, as Agent Dick effectively concedes, made any mention of discrete-act or hostile work environment Rehabilitation Act claims. Thus, Agent Dick proffers no evidence that Walker's omission of the Rehabilitation Act claims was unreasonable.[12]

The Court thus holds that where an agency reasonably fails to identify for investigation a claim indirectly asserted in a plaintiff's administrative charge, and where the plaintiff does not timely object to this omission before the agency, the plaintiff cannot show that he has exhausted administrative remedies as to this claim. *See Park*, 71 F.3d at 907.[13] Accordingly, the Court

---

[12] The formal EEO charge does read: "I have presented to the FBI a detailed list of specific acts of retaliation and reprisal over the past several years and asked for relief." Complaint of Discrimination, Defs.' Ex. B. Even if the phrase "detailed list" can be construed to refer to the letter to Crislip, the sentence does not expressly incorporate the letter's claims into the formal charge. And Walker may have reasonably concluded that the enclosed letter provided background information, but that the claims set forth in the charge superseded or refined the claims previously raised in the letter.

[13] This rule not only follows from *Park*, but also finds support in decisions of this Court concerning exhaustion under Title VII. *See Cheatham*, 935 F. Supp. 2d at 237 (holding that Title VII plaintiff failed to exhaust two of four claims included in his formal EEO charge given that agency declined to investigate those two claims and because, "throughout the investigation," he "never indicated that the investigation was narrower than his EEO complaint"); *Green v. Small*, No. CIV.A. 05-1055 (ESH), 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) (finding failure to exhaust in part because Title VII plaintiff "made no attempt to augment the 'accepted allegation' or amend his [EEO charge] prior to the conclusion of the investigation" and had thus not "diligently pursued" his claims); *see also McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (reviewing cases standing for proposition that "failure to respond to the framing

dismisses for lack of jurisdiction Counts Three, Four, Five, Six, Eight, and Ten insofar as they allege that Agent Dick suffered discrete acts of discrimination and a hostile work environment because of his disability, in violation of the Rehabilitation Act.  *See Mahoney*, 824 F. Supp. 2d at 58.

### 2.  Hostile Work Environment under the ADEA (Counts Ten and Eleven)

Incorporating the discrete-act discrimination allegations under the Rehabilitation Act, Counts Ten and Eleven allege that Agent Dick also suffered a hostile work environment because of his age, in violation of the ADEA.  *See* First Am. Compl. ¶¶ 235, 238–51.  As an affirmative defense, Defendants argue that Agent Dick's ADEA hostile work environment claim—like his Rehabilitation Act hostile work environment claim—was not exhausted because Walker's letter did not identify the claim for investigation, and Agent Dick never responded to the letter.  *See* Mem. Supp. Defs.' Suppl. Mot. Dismiss 13–14.

The Court agrees that Agent Dick has failed to exhaust his ADEA hostile work environment claim.  The EEO charge alleged discrete discriminatory acts—that the FBI issued the BOLO, required a fitness for duty examination, pursued a "10 year internal affairs investigation," and revoked his security clearance—and stated an overarching claim that Agent Dick was being "force[d] . . . out" on account of his age.  Complaint of Discrimination, Defs.' Ex. B.  Although the allegations in Agent Dick's EEO charge, taken together, could plausibly have led to an investigation of an ADEA hostile work environment claim, *see Park*, 71 F.3d at

---

of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO" (internal quotation marks omitted)) *aff'd in part*, No. 11-5247, 2012 WL 1450565 (D.C. Cir. Apr. 12, 2012) *and aff'd sub nom. McKeithan v. Vance-Cooks*, 498 F. App'x 47 (D.C. Cir. 2013).  To be sure, exhaustion is "not jurisdictional" under Title VII, but this distinction counsels in favor of more vigilance when inquiring into exhaustion under the Rehabilitation Act.  *Mahoney*, 824 F. Supp. 2d at 58 (quoting *Artis*, 630 F.3d at 1034 n.4).

909; *see also Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 348 (D.D.C. 2013) ("[A] plaintiff need not use any magic words in a charge much less use the specific term 'hostile work environment' in order to properly exhaust such a claim."), those allegations are not sufficiently clear to lead necessarily to that conclusion.

Crucially, in any event, Walker's letter of October 23, 2013, changes the analysis: The letter explained that the FBI had accepted for investigation only discrete-act age discrimination claims, with no mention of an ADEA hostile work environment claim. *See Park*, 71 F.3d at 909; Mem. Supp. Suppl. Mot. Dismiss 13. At this point, it was incumbent upon Agent Dick to clarify his imprecise allegations if he believed that the FBI had misinterpreted them. But like Agent Dick's Rehabilitation Act discrete-act and hostile work environment claims, his ADEA hostile work environment claim was not identified by the FBI for investigation, and he did not object to this omission. *See supra* Part IV.A.1. Moreover, Defendants have demonstrated that the omission was reasonable, given the EEO charge's lack of a clearer reference to a hostile work environment claim. Because the ADEA hostile work environment claim cannot "arise from 'the administrative investigation that *can reasonably be expected* to follow the charge of discrimination,'" the Court concludes that Agent Dick failed to exhaust administrative remedies as to this claim. *Park*, 71 F.3d at 907 (citation omitted) (emphasis added).

The Court accordingly grants Defendants' motion to dismiss Agent Dick's claim in Count Ten, reasserted in Count Eleven, that he suffered a hostile work environment because of his age, in violation of the ADEA.

### 3.  Retaliation under the Rehabilitation Act and the ADEA (Counts Three, Seven, Eight, and Ten)

The Court now considers whether Agent Dick exhausted his retaliation claims under the Rehabilitation Act and the ADEA.  Agent Dick alleges that all discrete acts alleged to be discriminatory under the Rehabilitation Act also constituted retaliation in violation of the Rehabilitation Act and the ADEA—the BOLO issuance (Count Seven, First Am. Compl. ¶ 221)[14], the improper collection and disclosure of confidential information related to the fitness for duty examination (Count Ten, *id.* ¶ 234, incorporating Count Four), the fitness for duty examination itself (Counts Three, *id.* ¶ 186, and Seven, *id.* ¶ 221), suspension without pay (Count Ten, *id.* ¶ 234, incorporating Count Six), the failure to disclose to him the fitness for duty examination results (Count Eight, *id.* ¶¶ 230–31), and interference with his right to counsel and ongoing monitoring of him and his communications with counsel (Counts Eight, *id.*, and Ten, *id.* ¶ 237).  *See generally id.* ¶¶ 233–37 (Count Ten alleging that all alleged discrimination constitutes retaliation under both statutes).

In contending that Agent Dick failed to exhaust his retaliation claims, Defendants again argue that Agent Dick did not respond to Walker's October 23, 2013, letter.  Mem. Supp. Defs.' Suppl. Mot. Dismiss 15 ("[T]he EEO Office instructed Plaintiff's counsel to advise in writing if he disagreed with the FBI's decision not to accept the reprisal claim, but Plaintiff did not submit any response.").  But Defendants overlook an important distinction: The FBI did not omit the "reprisal" claim from the investigation, but rather dismissed it for failure to state a claim.  *See*

---

[14] Count Seven's heading suggests that the fitness for duty examination is the sole basis of the retaliation claim asserted therein.  However, the explanation of that Count asserts that Agent Dick "made it clear he would challenge the BOLO as an act of retaliation and reprisal at the time the Agency issued its demand for a mandatory fitness for duty examination."  First Am. Compl. ¶ 221.  Out of caution, the Court construes Count Seven to allege two acts of retaliation—both the BOLO issuance and the fitness for duty examination.

Walker letter of Oct. 23, 2013, Defs.' Ex. C.  For the reasons that follow, the Court concludes

that Agent Dick exhausted his Rehabilitation Act and ADEA retaliation claims.[15]

Under the EEOC regulations, prior to a complainant's request for a hearing, a federal

agency "shall dismiss" all or part of a discrimination charge on any number of several

enumerated grounds, including failure to state a claim.  29 C.F.R. § 1614.107(a)(1).  A partial

dismissal of an employee's discrimination charge—the dismissal of "some but not all" of the

claims in a charge—triggers a specific appeals procedure.  *Id.* § 1614.107(b).  If the agency fails

to complete its investigation within 180 days following the filing of the formal charge, the

complainant may request a hearing before an EEOC administrative judge, at which hearing the

partial dismissal is "reviewable."  *Id.* § 1614.107(b); *see also id.* § 1614.108(f), (h).  This right to

review does not depend on whether a complainant "preserves" the issue by responding to an

initial partial dismissal.  Once the agency takes final action either adopting or overruling the

initial partial dismissal, either party may file an administrative appeal to the EEOC.  *See id.* §§

1604.107(b), 1614.110(a), 1614.401.  Lastly, and crucially for this case, after 180 days following

the filing of an administrative charge, if the agency has not taken final action and no appeal has

been filed, the complainant can forgo a hearing and "is authorized under . . . the ADEA and

Rehabilitation Act to file a civil action in an appropriate United States District Court[.]"  *Id.*

§ 1614.407(b).[16]  Thus, when the 180-day investigation period lapses, the plaintiff still has a

---

[15] The burdens of proof fall differently on the parties because exhaustion is jurisdictional under the Rehabilitation Act, while failure-to-exhaust is an affirmative defense under the ADEA.  *See supra*.  But because the Court concludes that Agent Dick has carried his burden to prove exhaustion of his Rehabilitation Act retaliation claim, and because the factual and legal analyses governing exhaustion of Agent Dick's Rehabilitation Act and ADEA retaliation claims are the same, the Court also concludes that Defendants have not carried their burden to prove that Agent Dick failed to exhaust his ADEA retaliation claim.

[16] Regarding complaints under the ADEA, the regulations expressly provide that "administrative remedies will be *considered to be exhausted* for purposes of filing a civil action [ . . . ] 180 days

right to have the partial dismissal reviewed.  At this point, his choice to seek review in this Court

as permitted by the regulations, rather than with an administrative judge, does not extinguish the

dismissed claim.

Further guidance comes from *Franklin v. Potter*, in which this Court concluded that once

an agency issues a final decision incorporating an earlier partial dismissal, the complainant has

exhausted administrative remedies as to the dismissed claim, notwithstanding a failure to oppose

the dismissal before the agency.  600 F. Supp. 2d 38, 61–62 (D.D.C. 2009).  Franklin, a U.S.

Postal Service employee, filed a formal EEO charge alleging gender- and disability-based

discrimination, including a claim for "hostile work environment harassment."  *Id.* at 56.  The

Postal Service dismissed the harassment claim "because the facts alleged did not constitute a

hostile work environment."  *Id.*  The agency's final decision expressly "endorsed and

incorporated by reference" its earlier dismissal.  *Id.* at 61.  Subsequently in this Court, Franklin

asserted his hostile work environment claim.  Concluding that Franklin exhausted this claim, the

Court first rejected the defendant's argument that Franklin's failure to "oppose the [a]gency's

dismissal" of the claim constituted a failure to exhaust.  *Id.* (citation omitted).  The Court

reasoned that Franklin "could not have asked the EEOC or this Court to review a *partial*

dismissal of his complaint until the agency issued its final decision on the rest of the complaint."

*Id.*  Next, the Court concluded that after the final agency decision expressly endorsed the earlier

dismissal, Franklin "had fully exhausted his claims and had no obligation to pursue an

administrative appeal, because the regulations permitted him to file a civil action . . . ."  *Id.*

(citing 29 C.F.R. § 1614.407(a)).

---

after the filing of an individual complaint if the agency has not taken final action and the
individual has not filed an appeal . . . ."  29 C.F.R. § 1614.201(c) (emphasis added).

To be sure, a claim cannot be exhausted by *any* partial dismissal: An implied premise of *Franklin* is that the dismissed claim was "like or reasonably related" to the claim asserted in court. *Park*, 71 F.3d at 907 (citation omitted). *Park*'s "like or reasonably related" requirement ensures that the agency has both notice of and an opportunity to investigate claims, *see Wilson*, 79 F.3d at 165; *Brown*, 777 F.2d at 15, protecting against the risk that a plaintiff circumvents the exhaustion doctrine by asserting in court a claim wholly unrelated to the dismissed claim.[17]

Reading the EEOC regulations, *Franklin*, and *Park* together, this Court concludes that where an agency dismisses some but not all claims in an administrative charge and does not take final action within the 180-day investigation period, the complainant exhausts administrative remedies as to the dismissed claims, so long as they are "like and reasonably related" to the claims asserted in court, notwithstanding his failure to oppose the dismissal before the agency. 29 C.F.R. §§ 1614.107(b), 1614.407(b); *Park*, 71 F.3d at 907; *Franklin*, 600 F. Supp. 2d at 61.

Applying this test to the instant facts, the Court holds that Agent Dick exhausted administrative remedies as to his Rehabilitation Act and ADEA retaliation claims. Under the EEOC regulations, Agent Dick had the right to bring his retaliation claims to court: He alleges, without response from Defendants, that following the initial partial dismissal of his "reprisal" claim, the FBI failed to take final agency action within the 180-day investigation period. *See* First Am. Compl. ¶¶ 141, 146. Moreover, the "reprisal" claim in Agent Dick's EEO charge was "like or reasonably related" to the Rehabilitation Act and ADEA retaliation claims asserted in this Court. *Park*, 71 F.3d at 907. The "reprisal" claim was buttressed by factual allegations in

---

[17] Of course, this risk inheres not only in partial dismissals, but also in full dismissals: If an agency dismisses all claims in a complaint under § 1614.107, the agency "shall take final action by issuing a final decision" that includes "the rationale for dismissing any claims in the complaint . . . ." 29 C.F.R. § 1614.110(b). Such final action enables the complainant to proceed to court within 90 days. *See id.* § 1614.407(a).

Agent Dick's letter to Crislip that the fitness for duty examination was ordered as a result of his "protestations of harassment and abuse generally" and his "recent response to the failure of the FBI to treat [him] for a work related injury."  Dick letter of June 21, 2013, Pl.'s Ex. 3.  In an exhaustion analysis, "the strictures of common law pleading have no place in a scheme largely dependent upon self-service in drawing up administrative charges."  *Brown*, 777 F.2d at 14 (internal quotation marks and citations omitted).  For the same reason, the fact that Agent Dick presented his retaliation claims "with greater specificity" in this Court than he did in proceedings before the FBI does not foreclose a finding of exhaustion.  *Lyles*, 777 F. Supp. 2d at 134 (citation omitted).[18]

Like Franklin's failure to "oppose the . . . dismissal," Agent Dick's failure to respond to the FBI's partial dismissal of his "reprisal" claim did not nullify his right under the regulations to file a civil action.  *Franklin*, 600 F. Supp. 2d at 61.  Although Agent Dick could have taken certain actions in administrative proceedings to preserve more clearly his dismissed claim,[19] nowhere do the regulations *require* Agent Dick to do so in order to exhaust the claim.  To the

---

[18] Moreover, the fact that the FBI accepted for investigation a claim absent from both the formal EEO charge and the allegedly appended letter to Crislip demonstrates that even the FBI did not consider itself limited by the EEO charge in defining the scope of its investigation.  *See* Walker letter of Oct. 23, 2013, Defs.' Ex. C (accepting claim that Agent Dick was suspended indefinitely without pay).

[19] Following the partial dismissal of his "reprisal" claim, he could have requested a hearing after 180 days or awaited final agency action and filed an administrative appeal.  *See* 29 C.F.R. §§ 1614.108(f), (h), 1614.401(a).  Besides directly challenging the dismissal, Agent Dick could have amended his complaint, *see id.* § 1614.106(d), or responded to Walker's letter by providing more detailed factual allegations supporting his "reprisal" claim.  The Court additionally observes that the fifteen-day response window provided by Walker's letter does not seem to have a basis in the regulations.  *See* Walker letter of Oct. 23, 2013 at 2, Defs.' Ex. C.  *Compare* 29 C.F.R. § 1614.107(a)(1) (dismissal for failure to state a claim), *with id.* § 1614.107(a)(7) (dismissal for failure to respond within fifteen days to "written request to provide relevant information or otherwise proceed with the complaint").  In any event, neither Walker's letter nor the regulations provide that a failure to respond to an initial notice of dismissal extinguishes other avenues for redress—such as filing a civil suit after the 180-day investigation period.

contrary, he was entitled to wait 180 days and, in the absence of final agency action, to bring his

claims to this Court, as he ultimately did.  *See* 29 C.F.R. § 1614.407(b).[20]  Nor can Agent Dick's

failure to challenge the dismissal be equated with a failure to "cooperat[e]" with the FBI's EEO

investigation.  *Wilson*, 79 F.3d at 166 ("Once a complainant files a complaint . . . *and cooperates*

with the agency . . . for 180 days, he is not required to take any further action to exhaust his

administrative remedies." (emphasis added)).  Here, the FBI never requested any information

from Agent Dick that it considered necessary to its investigation of the "reprisal" claim.  *Cf.* 29

C.F.R. § 1614.107(a)(7); *see Wilson*, 79 F.3d at 166 (explaining that plaintiff exhausted

administrative appeal where EEOC "did not request any information from him" during its

investigation).  In sum, in accordance with the EEOC regulations, Walker's letter provided

Agent Dick with various options for challenging the dismissal, *see* Walker letter of Oct. 23, 2013

at 4, Defs.' Ex. C, and he simply opted for one of them—filing a civil action in court.

Agencies should not misconstrue this opinion to mean that dismissal of a claim forecloses

a failure-to-exhaust defense, while wholly ignoring a claim without objection from the

complainant preserves such a defense.  First, as explained above, the Court holds only that the

FBI's *reasonable* omission from its investigation of indirectly stated or imprecisely defined

claims, without objection from Agent Dick, resulted in a failure to exhaust.  *See supra* Part

---

[20] In the absence of a relevant regulation, the Court declines to impose a "reasonable efforts" requirement on complainants whose claims are partially dismissed.  *But see Stewart v. White*, No. 13-1125 (CKK), 2014 WL 3747664, at *6 (D.D.C. July 31, 2014) (concluding that, under *Park*, a federal employee did not exhaust remedies as to partially dismissed claims where no evidence showed that she "attempted to clarify her claims at any point during the agency's investigation"); *Burkes v. Holder*, 953 F. Supp. 2d 167, 171, 174 (D.D.C. 2013) (holding, where agency decided not to accept a claim for investigation for "fail[ure] to state a claim," that Title VII plaintiff failed to exhaust given lack of evidence that he "challenged the agency's decision" or that he "filed any additional complaints").  By this approach, the Court also avoids myriad administrability problems inherent in determining the nature and degree of response from the complainant that would suffice to constitute exhaustion.

IV.A.1.  Second, a dismissal forecloses a failure-to-exhaust defense only insofar as the dismissed claim is "like or reasonably related" to the claim asserted in court.  *Park*, 71 F.3d at 907.

Notwithstanding the narrowness of today's holding, the Court emphasizes the fundamental distinction between a dismissal and a reasonable omission of a claim without objection, viewed through the policies animating the exhaustion doctrine.  The unchallenged omission is an indication that the agency neither has considered nor will consider the omitted claim; courts thus presume that the agency has not received "notice of a claim and [an] opportunity to handle it internally."  *Brown*, 777 F.2d at 15.  By contrast, a dismissal demonstrates that the agency has in fact had "an opportunity to resolve the matter internally . . . ."  *Wilson*, 79 F.3d at 165.  Before deciding to dismiss a claim, the agency must identify it in the charge, consider the elements of the claim, and determine whether the charge has alleged each of the elements.  *See* 29 C.F.R. § 1614.107(a)(1) (mandating pre-hearing dismissal for failure to state a claim).  While this work might not be fact-intensive, a dismissal marks the culmination of the agency's initial consideration of the claim, not a lack of consideration altogether.

One final issue bears on the exhaustion of Agent Dick's retaliation claims: Here, because certain acts of alleged retaliation occurred after Agent Dick's EEO charge—the fitness for duty examination, the failure to disclose the examination results to him, the interference with his right to counsel, and the ongoing monitoring of him and his communications with counsel—this case potentially presents the question of whether Agent Dick had to separately exhaust administrative remedies as to these post-charge events.  As understood by Defendants, Agent Dick's opposition asserts that he did not need to exhaust any retaliation claims based on post-charge events "reasonably related" to properly asserted claims in the charge.  *See* Pl.'s Mem. Opp'n 11; Defs.' Reply Supp. Defs.' Suppl. Mot. Dismiss 9; *see also Wedow v. City of Kansas City, Mo.*, 442 F.3d

661, 674 (8th Cir. 2006) (holding that where an EEO charge had alleged "ongoing and continuing" retaliation for sex discrimination complaints, the plaintiff did not need to separately exhaust claims alleging post-charge retaliation of "identical character," because such claims could be reasonably expected to grow out of the agency's investigation of the charge); *accord Jones v. Bernanke*, 685 F. Supp. 2d 31, 37 (D.D.C. 2010).[21]  But Defendants expressly decline to address this issue because they claim (incorrectly) that all alleged retaliation occurred before Agent Dick initiated EEO counseling.  *See* Defs.' Reply Supp. Defs.' Suppl. Mot. Dismiss 9. Accordingly, in the absence of any briefing, the Court does not dismiss Agent Dick's claims alleging post-charge retaliation for failure to exhaust.

Because Agent Dick has demonstrated that he exhausted administrative remedies as to his retaliation claims under both the Rehabilitation Act and the ADEA, respectively, the Court has subject-matter jurisdiction over the former claims, and Defendants cannot establish their affirmative failure-to-exhaust defense as to the latter.  Accordingly, the Court will not dismiss the retaliation claims asserted in Counts Three, Seven, Eight, and Ten, for failure to exhaust administrative remedies.

## B.  Failure to State Retaliation Claims under the Rehabilitation Act and the ADEA (Counts Three, Seven, and Ten)

In the alternative, Defendants move to dismiss all retaliation claims for failure to state a claim, on the basis that Agent Dick does not allege any "statutorily protected activity" preceding

---

[21] The D.C. Circuit acknowledged the Eighth Circuit's approach in *Wedow* but declined to consider the question addressed therein.  *See Weber v. Battista*, 494 F.3d 179, 183–84 (D.C. Cir. 2007); *accord Pierson v. Wash. Metro. Area Transit Auth.*, 821 F. Supp. 2d 360, 365–66 (D.D.C. 2011).

the alleged retaliation.  *See Solomon*, 763 F.3d at 14 (Rehabilitation Act); *Jones*, 557 F.3d at 677

(ADEA); Mem. Supp. Defs.' Suppl. Mot. Dismiss 14–15.

As to the Rehabilitation Act retaliation claim, the Court grants in part Defendants' motion

to dismiss.  The Court agrees that Agent Dick has not stated a claim that the May 8, 2013, BOLO

was retaliatory, given that he does not allege any pre-BOLO activity protected by the

Rehabilitation Act.  *See Solomon*, 763 F.3d at 14.[22]  But the Court denies the motion as to other

instances of retaliation.  The Rehabilitation Act prohibits retaliation for any "oppos[ition]" to

alleged disability discrimination; such opposition need not be the filing of a formal EEO charge.

42 U.S.C. § 12203.[23]  The exhibits to the first amended complaint show that as early as late May

2013, Agent Dick, through Byrnes, alleged disability-based discrimination in communications

with FBI personnel—even expressly invoking the Rehabilitation Act.[24]  On May 23, 2013,

Byrnes informed an FBI official by email that Agent Dick "is invoking all the protections of the .

. . Rehabilitation Act" and "is asserting that you are perceiving him as disabled and have tried to

revoke his clearance based on the perception that he is mentally unfit."  Byrnes email of May 23,

2013, Compl. Ex.  On June 7, 2013, Byrnes advanced similar claims in a letter to the FBI human

resources official whom Agent Dick had criticized.  *See* Byrnes letter of June 7, 2013, Pl.'s

Ex. 1.  Defendants claim that these communications were not protected because they were "not

---

[22] During his initial counseling session, Agent Dick suggested that the BOLO and other retaliation was caused by much earlier activity—his "prior issues with management & successful Merit Systems Protection Board case against [the FBI]."  Report of Counseling, Defs.' Ex. A. But the first amended complaint fails to allege that any of these earlier disputes involved Agent Dick's opposition to disability (or age) discrimination.  *See* First Am. Compl. ¶¶ 1–90.

[23] *See also Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16 (D.C. Cir. 2009) (explaining that the Rehabilitation Act, via the ADA, "bars retaliation against an individual for making a charge under *or opposing any practice* made unlawful by that Act" (emphasis added)).

[24] Although the main body of the complaint does not mention these communications, the Court may consider "documents attached as exhibits or incorporated by reference in the complaint . . . ."  *Ward*, 768 F. Supp. 2d at 119 (citation omitted).

made to anyone involved in the EEO process" and "did not raise any concern of discrimination,"

but these assertions are legally and factually incorrect, respectively. Defs.' Reply Supp. Defs.'

Suppl. Mot. Dismiss 8 (discussing Byrnes letter of June 7, 2013, Pl.'s Ex. 1).[25] Because

Defendants do not assert any other basis for dismissal of Agent Dick's Rehabilitation Act

retaliation claim (*e.g.*, lack of causation, lack of materially adverse retaliation) the court denies

the motion to dismiss as to all alleged retaliation that followed Byrnes's communications—the

improper collection and disclosure of confidential information (June 2013),[26] the directive to

complete the fitness for duty examination (June 18, 2013), the suspension without pay (June 19,

2013), the failure to disclose to Agent Dick the examination results (after December 2013), the

interference with his right to counsel (after February 2014), and the ongoing monitoring of him

and his communications with counsel.

Similarly, the Court dismisses the ADEA retaliation claim as to certain alleged instances

of retaliation, but not as to others. The first amended complaint fails to allege plausibly that

Agent Dick engaged in any "statutorily protected activity" under the ADEA before either the

BOLO issuance (May 8, 2013), his receipt of the notice requiring the fitness for duty

examination (June 18, 2013), or his suspension without pay (June 19, 2013). But Defendants do

not dispute that Agent Dick asserted age discrimination claims on June 26, 2013, during his

---

[25] The Court notes that Byrnes's letter of June 7, 2013, attached to Agent Dick's opposition, does not appear to be among the "documents attached as exhibits or incorporated by reference in the complaint . . . ." *Ward*, 768 F. Supp. 2d at 119 (citation omitted). Nonetheless, the Court addresses the letter given that Defendants discuss it on reply. In any event, even if the Court were to decline to consider the June 7 letter, its analysis would be unchanged because Byrnes's earlier email of May 23, 2013, attached as an exhibit to the first amended complaint, included Rehabilitation Act claims similar to those contained in the June 7 letter. *See* Byrnes email of May 23, 2013, Compl. Ex.

[26] The first amended complaint alleges that at some point in "June 2013," the FBI disclosed to Agent Dick's wife information about the requirement that he complete the fitness for duty examination. *See* First Am. Compl. ¶ 116.

counseling session with Crislip.  *See* Report of Counseling, Defs.' Ex. A.[27]  Nor do they contend

that these statements were not protected by the ADEA.  Assuming the truth of the allegations in

the complaint, the Court concludes that other retaliatory acts occurred *after* the counseling

session—the improper collection and disclosure of confidential information (June 2013), the

fitness for duty examination (December 2013),[28] the FBI's failure to disclose its results (after

December 2013), the interference with Agent Dick's right to counsel (after February 2014), and

the ongoing monitoring of him and his communications with his attorney.  Because Defendants

fail to address these alleged instances of retaliation, the Court will deny their motion to dismiss

as to these allegations.

 Accordingly, the Court grants Defendants' motion to dismiss Counts Three, Seven, and

Ten as to Agent Dick's claims that Defendants retaliated against him by issuing the BOLO, in

violation of the Rehabilitation Act and the ADEA, and by initially ordering the fitness for duty

---

[27]As explained above, Agent Dick, through Byrnes, complained of alleged discrimination based on his perceived mental disability, in violation of the Rehabilitation Act.  But Byrnes's communications make no mention of any alleged *age* discrimination in violation of the ADEA. *See* Byrnes email of May 23, 2013, Compl. Ex.; Byrnes letter of June 7, 2013, Pl.'s Ex. 1.

[28] The first amended complaint does not expressly disaggregate the notice (received on June 18, 2013) from the examination itself (conducted in December 2013).  *See, e.g.*, First Am. Compl. ¶ 186 ("[T]he FBI is using mandatory psychiatric fitness for duty examinations as a retaliatory and disciplinary tool.")  For the sake of completeness, the Court analyzes them separately.  The Court notes, however, that it is unclear whether the examination, the failure to disclose its results, the interference with counsel, or the monitoring of Agent Dick and his communications constitutes actionable retaliation.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (applying to Rehabilitation Act retaliation analysis the test of *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), which provides that the "plaintiff must show that a reasonable employee would have found the challenged [retaliatory] action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").

examination and suspending him without pay, in violation of the ADEA.  The Court, however,

denies the motion as to the other alleged instances of retaliation.[29]

## V.  CONCLUSION

For the foregoing reasons, Defendants' supplemental motion to dismiss or for partial

summary judgment (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 19, 2015                                RUDOLPH CONTRERAS
                                                         United States District Judge

---

[29] To summarize, Agent Dick's remaining claims are those for (i) discrete-act discrimination under the ADEA as to the BOLO issuance, the improper collection and disclosure of confidential information, the mandatory fitness for duty examination, the suspension without pay, the failure to disclose examination results to him, the interference with his right to counsel, and the monitoring of him and his communications with counsel; (ii) retaliation under *both* the Rehabilitation Act and ADEA as to the improper collection and disclosure of confidential information, the mandatory fitness for duty examination (completed in December 2013), the failure to disclose examination results to him, the interference with his right to counsel, and the monitoring of him and his communications with counsel; and (iii) retaliation under *only* the Rehabilitation Act as to the suspension without pay.